ALICE LUCILLE CRAVEN BRITT, OSSIE GERMAN BRITT AND IDA LEOLA CRAVEN BRISTOW v. GARLAND W. ALLEN

No. 124

(Filed 31 January 1977)

1. **Trial §§ 48, 54— setting aside verdict — new trial — discretionary authority of court**

   The trial judge is vested with the discretionary authority to set aside a verdict and order a new trial whenever in his opinion the verdict is contrary to the greater weight of the credible testimony.

2. **Appeal and Error § 54— discretionary action — no review on appeal**

   The Court of Appeals did not err in affirming the trial judge's discretionary action in setting the verdict aside on the ground that it was against the greater weight of the evidence, and the trial court's acknowledgment that he had committed unspecified errors of law was mere surplusage and did not make his order appealable.

3. **Appeal and Error § 54; Rules of Civil Procedure § 50— judgment n.o.v. — appeal from discretionary order — absence of motion for judgment n.o.v.**

   The Court of Appeals, upon finding that defendant was erroneously denied a directed verdict at the close of all the evidence, erred in directing entry of judgment for defendant notwithstanding the verdict for plaintiffs since (1) the question of legal sufficiency of plaintiffs' evidence to go to the jury was not presented by a purported appeal from the court's discretionary order setting aside the verdict as being against the greater weight of the evidence, and (2) the Court of Appeals had no authority to enter a judgment n.o.v. where defendant made no motion for such judgment in the trial court, and the trial court did not, on its own motion after judgment, grant, deny or redeny the motion for directed verdict made at the close of the evidence. G.S. 1A-1, Rule 50(b) (2).

4. **Appeal and Error § 41— record on appeal — narration of evidence — mandatory requirement**

   Narration of the evidence in the record on appeal as specified in App. R. 9(c) is mandatory, and an appeal is subject to dismissal for violation of the rule.

ON petition for discretionary review of the decision of the Court of Appeals reported in 27 N. C. App. 122, 218 S.E. 2d 218 (1975), affirming in part and reversing in part the order of *Long, J.,* entered at the 9 December 1974 Session of the Superior Court of RANDOLPH County, docketed and argued as Case No. 19 at the Spring Term 1976.

In this action plaintiffs, Mr. and Mrs. O. G. Britt and Mrs. Ida L. Bristow, seek to recover damages from defendant G. W.

Allen for the breach of an alleged contract to buy and sell land. The controversy has been before the Court of Appeals in one posture or another five different times. *See Britt v. Smith,* 6 N.C. App. 117, 169 S.E. 2d 482 (1969) ; *Britt v. Allen,* 12 N.C. App. 399, 183 S.E. 2d 303 (1971) ; *Britt v. Allen,* 15 N.C. App. 196, 189 S.E. 2d 543 (1972) ; *Britt v. Allen,* 21 N.C. App. 497, 204 S.E. 2d 903 (1974) ; *Britt v. Allen,* 27 N.C. App. 122, 218 S.E. 2d 218 (1975).

Plaintiffs' evidence, summarized except when quoted, tended to show the following facts:

In October 1966 plaintiffs owned a 33½ acre farm in Randolph County which was subject to a first deed of trust securing their note for $3,000.00 to Peoples Savings and Loan Association (S & L Association) and to a second deed of trust securing a loan of $1,100.00 from the Bank of Coleridge. In October 1966 plaintiffs were behind with their payments to the S & L Association and the property was advertised for sale at public auction on 25 November 1966. At that time plaintiffs owed the S & L Association $2,200.00 and the bank between $400.00 and $500.00.

Mrs. Britt testified that in October 1966 she requested defendant to lend plaintiffs $3,000.00 on the land "to straighten it up." Defendant declined to lend plaintiffs any money on the land, but he said he would see she did not lose her home; that as soon as he could get it surveyed "he would take enough land, buy enough land to clear it up. Then he would sell it back to [plaintiffs] with a six percent interest, if [they] wanted it back. . . . He said he would take it [the land] on the right of the driveway going into the house, and [plaintiffs] agreed on that." Such a division would leave plaintiffs with about 15 acres including the house, barns, and outbuildings; and defendant "would buy the rest." Thereafter, according to Mrs. Britt's testimony, defendant "claimed he couldn't get a surveyor," and the land was sold on 25 November 1966. Defendant, however, assured Mrs. Britt that he would file an upset bid on the property, and he did, in fact, raise the bid. Whereupon the trustee readvertised the land for sale on 27 December 1966.

On 27 December 1966 defendant told Mrs. Britt that he had not been able to get a surveyor but if anyone raised his bid he would "put a bid over them" and that he would see they didn't lose the property. He told Mrs. Britt to go home and bring

Mr. Britt to his office and they would "make the deed now." However, when Mrs. Britt returned with her husband, defendant told her they could not "fix" the papers then; that he would tell them when to come back and make the deed.

Thereafter Mrs. Britt heard nothing further about "this foreclosure" until 16 January 1967 when three men appeared at her home and announced they had bought the property at the foreclosure sale. In May 1968, the purchasers evicted plaintiffs.

After the payment of all liens against the property out of the proceeds of the sale ($3,500.00) the trustee paid the surplus of about $705.00 into the office of the clerk of the superior court.

Plaintiffs' evidence tended to show that the fair market value of the property in December 1966 was between $12,000.00 and $33,500.00.

At the close of plaintiffs' evidence defendant moved for a directed verdict on the ground that plaintiffs had sued upon an oral contract for the sale and purchase of land which was void under the statute of frauds, G.S. 22-2. The court overruled the motion.

The defendant's testimony summarized, except when quoted, is set out below:

After the first sale of plaintiffs' property in November 1966, acting on his own initiative and without having discussed the matter with Mrs. Britt, defendant upset the sale by an increased bid of $200.00. Thereafter Mrs. Britt asked him "not to bid any more," and he promised her not to raise the bid again. She then told defendant she would like to sell him the land and have him "deed her back out of what [he] purchased from her approximately 15 acres or one-half of the tract." Defendant agreed that if plaintiffs would "make warranty deed and put it in escrow" with his attorneys he would turn over to those attorneys the money with which to pay all the indebtedness; that he would have the land surveyed and then deed back to her the land on the north side of the road which ran through the property, leaving him with approximately 18.5 acres. Mrs. Britt agreed to these terms; and defendant called his attorney, Mr. Moser, and instructed him to prepare the deed. Mr. and Mrs. Britt then left his office to go to the lawyer's office and make the deed so that he could "take up the loan."

Then Mrs. Britt's daughter, Mrs. Kivett, came to defendant and said she would like to buy ten acres of the land from him after he got title to the property. He "agreed to sell the daughter back ten acres . . . for $200 per acre, if [he] were able to get the property."

Three or four days after Mr. and Mrs. Britt left defendant's office to go to the office of Moser and Moser to execute the deed to defendant, Mr. Britt returned to defendant's office and told him he would not sign the deed conveying the property to defendant. He said, "We have had some domestic troubles and I have been drinking some, and she ran me off from home and we are separated. I am not allowed to go back home." Thereafter, defendant kept calling Mr. Moser's office to inquire if Mr. and Mrs. Britt had signed the deed. They never did, and he never paid off the indebtedness on the land.

On 27 December 1966 the trustee sold the land at public auction for $3,500.00. No upset bid was filed and the clerk of superior court confirmed the sale on 11 January 1967.

At the close of all the evidence defendant again moved for a directed verdict "on the same grounds specified at the close of plaintiffs' evidence." The motion was again denied.

Three issues, to which the record shows no objection, were submitted and answered as follows:

"1. Did the defendant, Garland W. Allen, enter into a contract with the plaintiffs by which he agreed to purchase 33½ acres of land for them at a foreclosure sale in exchange for their promise to convey him a portion thereof?

ANSWER: Yes.

2. If so, did the defendant breach said contract?

ANSWER: Yes.

3. What amount of damages, if any, are the plaintiffs entitled to recover of the defendant?

ANSWER: $11,000.00."

Defendant did not move under G.S. 1A-1, Rule 50(b)(1) to have judgment entered in accordance with his motion for a directed verdict. Instead he moved the court "to set aside the verdict . . . and declare a mistrial for that the verdict is con-

trary to the evidence and for errors of law committed during the trial. . . . " The trial judge granted defendant's motion. Neither defendant's motion nor the court's order specified the errors of law referred to therein.

Plaintiffs excepted to the judge's order and appealed. The Court of Appeals affirmed the order setting aside the verdict but reversed the order for a new trial. Upon reviewing the evidence, that court held that "[d]efendant's alleged promise to purchase a quantity of land from plaintiffs is clearly unenforceable for four reasons: (1) the quantity of land was never agreed upon, (2) the location of the lines was never agreed upon, (3) the purchase price was never agreed upon, and (4) the alleged agreement [being one for the purchase of land] was in violation of the statute of frauds because it was not in writing." *Britt v. Allen,* 27 N.C. App. 122, 125, 218 S.E. 2d 218, 220 (1975). The Court of Appeals accordingly reversed the order for a new trial and, *ex mero motu,* remanded the case to the superior court with directions to enter judgment for defendants. Upon plaintiffs' petition we allowed certiorari.

*Ottway Burton and Millicent Gibson for plaintiff appellants.*

*Moser and Moser for defendant appellee.*

SHARP, Chief Justice.

Plaintiffs' first assignment of error is that the Court of Appeals erred in affirming the trial judge's discretionary action in setting the verdict aside on the ground that it was against the greater weight of the evidence, and that unspecified errors of the law were committed during the trial. Plaintiffs' contention is that the verdict was in accordance with the evidence and that no errors of law occurred. This assignment has no merit and is overruled.

[1] "The power of the court to set aside the verdict as a matter of discretion has always been inherent, and is necessary to the proper administration of justice." *Bird v. Bradburn,* 131 N.C. 488, 489, 42 S.E. 936 (1902). The trial judge is "vested with the discretionary authority to set aside a verdict and order a new trial whenever in his opinion the verdict is contrary to the greater weight of the credible testimony." *Roberts v. Hill,* 240 N.C. 373, 380, 82 S.E. 2d 373, 380 (1954). Since such a

motion requires his appraisal of the testimony, it necessarily invokes the exercise of his discretion. It raises no question of law, and his ruling thereon is irreviewable in the absence of manifest abuse of discretion. *Williams v. Boulerice,* 269 N.C. 499, 153 S.E. 2d 95 (1967) ; *Martin v. Underhill,* 265 N.C. 669, 144 S.E. 2d 872 (1965) ; *Thomas v. Myers,* 87 N.C. 31 (1882) ; 7 Strong's N. C. Index 2d *Trial* §§ 48, 51 (1968). Certainly, the record in this case manifests no abuse of discretion. When a verdict is set aside for error in law, the decision is not a matter of discretion. In such a situation, "the aggrieved party may appeal, provided the error is specifically designated." *McNeill v. McDougald,* 242 N.C. 255, 259, 87 S.E. 2d 502, 504 (1955).

The adoption of the Rules of Civil Procedure (N. C. Sess. Laws 1967, ch. 954, § 4, effective 1 January 1970; N. C. Sess. Laws 1969, ch. 803, § 1) and the repeal of G.S. 1-207 (1953) did not diminish the trial judge's traditional discretionary authority to set aside a verdict. The procedure for exercising this traditional power was merely formalized in G.S. 1A-1, Rule 59, which lists eight specific grounds and one "catch-all" ground on which the judge may grant a new trial. Section (a) (9) of Rule 59 authorizes the trial judge to grant a new trial for "any other reason heretofore recognized on grounds for a new trial." *See* Sizemore, *General Scope and Philosophy of the New Rules,* 5 Wake Forest Intramural L. Rev. 1, 42-43 (1969).

[2] Judge Long specifically found that the verdict in this case is "contrary to the evidence" and that it was set aside "in the discretion of the court." The fact that he also acknowledged he had committed unspecified errors of law detracted not one whit from the effect of his discretionary order setting aside the verdict. This statement was mere surplusage and did not make Judge Long's order appealable. *See Atkins v. Doub,* 260 N.C. 678, 133 S.E. 2d 456 (1963) ; 1 Strong's N. C. Index 3d *Appeal and Error* § 54.3 (1976). *See also Ward v. Cruse,* 234 N.C. 388, 67 S.E. 2d 257 (1951).

[3] Plaintiffs' second assignment of error, that the Court of Appeals erred in remanding this case to the superior court for the entry of a directed verdict for defendant in accordance with his motion made at the close of all the evidence, must be sustained.

Upon reviewing the records in the four preceding appeals in this case, the Court of Appeals correctly concluded that in its opinion on the fourth appeal (21 N.C. App. 497, 204 S.E. 2d 903) it had misinterpreted the evidence and so had "applied sound principles of law to a state of facts not supported by the evidence." Being of the opinion that but for its error on the fourth appeal, the trial judge would have directed a verdict for defendant in accordance with his motion at this last trial, the Court of Appeals reversed his order for a new trial, affirmed his order setting aside the verdict, and remanded the case for entry of judgment notwithstanding the verdict so "that justice would be served."

However, the present posture of the case will not permit its termination by this method. The question of legal sufficiency of plaintiffs' evidence to go to the jury was not before the Court of Appeals. There being no abuse of discretion, the trial court's order setting aside the verdict as being against the greater weight of the evidence was not reviewable on appeal; there was left nothing from which an appeal would lie. *Atkins v. Doub,* 260 N.C. 678, 133 S.E. 2d 456 (1963); *Ward v. Cruse,* 234 N.C. 388, 67 S.E. 2d 257 (1951); *Strayhorn v. Fidelity Bank,* 203 N.C. 383, 166 S.E. 312 (1932); 1 Strong's N. C. Index 3d *Appeal and Error* § 54.3 (1976). A contention based on a question of law is not presented by an exception to the court's discretionary order setting aside a verdict. 7 Strong's N. C. Index 2d *Trial* § 51 (1968). Thus, the Court of Appeals disposed of this case by ruling on questions of law which were not the basis of *any* assignment of error and which, therefore, were not within the scope of review on appeal. *State v. Brooks,* 275 N.C. 175, 166 S.E. 2d 70 (1969); *Conrad v. Conrad,* 252 N.C. 412, 113 S.E. 2d 912 (1960); *Jones v. Jones,* 235 N.C. 390, 70 S.E. 2d 13 (1932). *See also* App. R. 10 (1975).

Even if the court's discretionary order were appealable, it was defendant who made the motion to set the verdict aside, and in no view of the matter is he now an aggrieved party entitled to appeal under G.S. 1-271 (1969). *Bethea v. Kenly,* 261 N.C. 730, 136 S.E. 2d 38 (1964).

Upon return of the verdict in favor of plaintiffs, had defendant then desired to preserve for appellate consideration the question of the sufficiency of their evidence to support a recovery against him, his proper course would have been to move

under G.S. 1A-1, Rule 50(b) for a judgment notwithstanding the verdict. (This motion, of course, would have had to have been made prior to the time the judge exercised his discretion to set aside the verdict.) Had defendant's motion for judgment *n.o.v.* been denied and judgment entered against him, he could then have had the legal questions raised by his motion determined on his appeal. *See* Sizemore, *General Scope and Philosophy of the New Rules,* 5 Wake Forest Intramural Law Rev. 1, 41 (1969); *Investment Properties v. Allen,* 281 N.C. 174, 188 S.E. 2d 441 (1973), *vacated on other grounds,* 283 N.C. 277, 196 S.E. 2d 262 (1973).

However, defendant did not follow this route and, since he did not, the Court of Appeals cannot remand the cause to the superior court with directions to enter judgment *n.o.v.,* for G.S. 1A-1, Rule 50(b)(2) specifically provides:

"An appellate court, on finding that a trial judge should have granted a motion for directed verdict made at the close of all the evidence, may not direct entry of judgment in accordance with the motion unless the party who made the motion for a directed verdict also moved for judgment in accordance with Rule 50(b)(1) or the trial judge on his own motion granted, denied, or redenied the motion for a directed verdict in accordance with Rule 50(b)(1)." *See Hensley v. Ramsey,* 283 N.C. 714, 727-729, 199 S.E. 2d 1, 8-9 (1973); 2 McIntosh, North Carolina Practice and Procedure § 1488.45 (Phillips Supp. 1970).

Rule 50(b) was rewritten by 1969 N. C. Sess. Laws, ch. 895, § 11 to incorporate section (2), which is set out in the preceding paragraph. The reasons for this revision are stated by Professor Phillips in his commentary on Rule 50:

"This provision [N. C. R. 50(b)(2)], not found in the Federal Rule counterpart, is designed to codify the result nonetheless dictated under that Rule by *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947) motion denied 331 U.S. 794, 67 S.Ct. 1725, 91 L.Ed. 1822. The reasons are important to an understanding of the intended application of the whole judgment n.o.v. practice. Where no judgment n.o.v. motion is made, the verdict winner is not given a pre-appeal chance to argue either before or after grant of the motion for the justice of giving him a new trial instead of granting judgment n.o.v. The trial judge is the

judicial officer in the best position to make this decision. Consequently, if on appeal the appellate court were able to reverse and direct entry of judgment in accordance with the motion for directed verdict, it would almost invariably feel impelled to remand upon reversal to allow the trial judge to consider for the first time the propriety of granting a new trial as a matter of grace. This could result in a second appeal. The practice dictated by this Rule forces the parties and the courts into a procedure which will require a trial court ruling on both alternatives so that they can likewise both be disposed of on one appeal." 2 McIntosh, North Carolina Practice and Procedure § 1488.45 n. 14 (Phillips Supp. 1970). *See* J. R. Elster, *Highlights of Legislative Changes to the New Rules of Civil Procedure,* 6 Wake Forest Intramural L. Rev. 267, 278-280 (1970).

In *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 91 L.Ed. 849, 67 S.Ct. 752 (1947), the defendant moved for a directed verdict at the close of all the evidence on the ground that the plaintiff's proof was insufficient to go to the jury. The motion was denied and, on the return of an adverse verdict, defendant did not move for judgment *n.o.v.* The Court of Appeals decided that certain evidence for the plaintiff had been improperly admitted and that without this evidence, the plaintiff's case would be insufficient to go to the jury. (153 F. 2d 576 (4th cir. 1946).) It then reversed the judgment of the trial court and directed that judgment be entered for the defendant. In reversing the decision of the Court of Appeals, the Supreme Court said that the trial judge had an unequalled "personal knowledge of the issues involved, the kind of evidence given, and the impression made by the witnesses. . . . Determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart. (Citations omitted.) Exercise of this discretion presents to the trial judge an opportunity, after all his rulings have been made and all evidence has been evaluated, to view the proceedings in a perspective available to him alone. He is thus afforded 'a last chance to correct his own errors without the delay, expense or other hardships of an appeal.' " *Id.* at 216, 91 L.Ed. 852-53.

**[4]** We understand and appreciate the desire of the Court of Appeals to correct an inadvertence and to end this protracted

litigation. Notwithstanding, this end may not be achieved by disregarding mandatory rules of procedure. It would, however, have been appropriate to dispose of this appeal by summarily dismissing it for appellant's flagrant disregard of Rule 19(d), Rules of Practice in the Court of Appeals of North Carolina. 2 N.C. App. 690 (1969); Rule 19(4), Rules of Practice in the Supreme Court of North Carolina. *See* App. R. 9(c), *applicable since* 1 July 1975 (1975 N. C. Sess. Laws, ch. 391, § 7).

In the record on appeal plaintiff-appellants have set out in question and answer form, just as it was transcribed by the court reporter, all the evidence elicited at the trial. The rambling, redundant, and confused record thus produced comprises 125 pages of the record when 25 would have sufficed for a proper narration. It has not only added to the cost of this fifth appeal, but has caused both appellate courts to expend time, which our rules requiring narration of the evidence were designed to save. Since none of the evidence was the subject of an exception, no judgment decision as to what evidence should be stated in question and answer form was involved. There can be no possible excuse for this disobedience of the rules of appellate procedure. Such an infraction constrains us to admonish all appellants that narration of the evidence as specified in App. R. 9(c) is mandatory.

The decision of the Court of Appeals affirming the trial court's order setting aside the verdict is affirmed. Its judgment vacating the trial court's order of a new trial and remanding the cause for entry of a directed verdict in accordance with defendant's motion at the close of all the evidence is reversed. Accordingly, this case is returned to the Court of Appeals with direction that it be remanded to the superior court for a trial *de novo.*

Affirmed in part; reversed in part and remanded.