BEN F. WORTHINGTON v. WILLIAM ANDERSON BYNUM

AND

JESSE COGDELL, JR. v. WILLIAM ANDERSON BYNUM

No. 803SC1021

(Filed 18 August 1981)

**Damages § 16; Rules of Civil Procedure § 59— verdict set aside for excessive damages — error**

In an action to recover damages for personal injuries sustained in an automobile accident, the trial court erred in setting aside as excessive a verdict for one plaintiff of $175,000 and a verdict for the second plaintiff of $150,000, since evidence of the amount of medical expenses, the severity and diversity of the injuries, the permanent disabilities, and the extensive evidence of pain and suffering of each plaintiff was sufficient to show that the verdicts were clearly within the maximum limit of a reasonable range; there was no evidence to support or suggest that the verdicts were given under the influence of either passion or prejudice, that the jury disregarded the trial court's instructions, or that the verdicts were contrary to law. Furthermore, the trial court erred in concluding that evidence of plaintiffs' sex life before and after the accident, evidence that one plaintiff lost teeth as a result of the accident, and evidence that one plaintiff had visual problems and psychiatric problems as a result of the accident were "improper things" that "kept coming up" and that the jury completely disregarded his instructions with respect to such evidence.

Judge WHICHARD concurring.

Judge MARTIN (Robert M.) dissenting.

APPEAL by plaintiffs from *Peel, Judge.* Judgment entered 27 May 1980 in Superior Court, PITT County.[1] Heard in the Court of Appeals 29 April 1981.

Plaintiffs filed separate complaints seeking to recover compensatory and punitive damages for personal injuries which they allegedly received when defendant's automobile negligently collided with the vehicle in which the plaintiffs were passengers on 23 May 1977. The two cases were consolidated for trial, and the defendant stipulated negligence. The damage trial began on 12 May 1980. After all the evidence was presented, the trial court granted defendant's motions for directed verdict on the punitive

---

1. By consent, judgment was entered out of session in the Lenoir County Superior Court.

damages claims in both cases. After receiving the court's instructions on compensatory damages, the jury deliberated for approximately thirty minutes and then returned verdicts for plaintiff Worthington in the amount of $175,000.00 and for plaintiff Cogdell in the amount of $150,000.00. Defendant moved to set aside the verdicts and for a new trial under Rule 59 of the Rules of Civil Procedure. The plaintiffs moved for a judgment in accordance with the jury verdicts. The trial court entered an order setting aside the verdicts and awarding a new trial.

*James, Hite, Cavendish & Blount, by M. E. Cavendish and Marvin Blount, Jr., for plaintiff appellants.*

*Gaylord, Singleton & McNally, by Louis W. Gaylord, Jr., for defendant appellee.*

BECTON, Judge.

Plaintiffs phrased their sole question for review thusly: "Did the trial court err in granting defendant's motion to set aside the jury's verdicts in favor of each plaintiff and in failing to enter order denying said motion and in refusing to enter judgment in favor of each plaintiff in accordance with the jury's verdicts?" On the facts of this case, the answer to the question is "yes."

We are not unmindful of the long line of cases suggesting that few, if any, legal principles are more firmly entrenched in the law of this State than the one which vests a trial judge with the power and authority to set aside a verdict when to do so is necessary for the proper administration of justice. Indeed, the cases upholding this principle are legion.

> We have held repeatedly since 1820 in case after case, and no principle is more fully settled in this jurisdiction, that the action of the trial judge in setting aside a verdict in his discretion is not subject to review on appeal in the absence of an abuse of discretion.

*Goldston v. Chambers*, 272 N.C. 53, 59, 157 S.E. 2d 676, 680 (1967). One of those many cases is *Settee v. Electric Ry.*, 170 N.C. 365, 367, 86 S.E. 1050, 1050-51 (1915) in which the Supreme Court said:

> The discretion of the judge to set aside a verdict is not an arbitrary one to be exercised capriciously or according to

Worthington v. Bynum and Cogdell v. Bynum

his absolute will, but reasonably and with the object solely of [preventing] what may seem to him an inequitable result. The power is an inherent one, and is regarded as essential to the proper administration of the law. It is not limited to cases where the verdict is found to be against the weight of the evidence, but extends to many others. While the necessity for exercising this discretion, in any given case, is not to be determined by the mere inclination of the judge, but by a sound and enlightened judgment in an effort to attain the end of all law, namely, the doing of even and exact justice, we will yet not supervise it, except, perhaps, in extreme circumstances, not at all likely to arise; and it is therefore practically unlimited.

In determining whether a trial judge abused his discretion in setting aside a jury award of damages, we are not only guided by case law, but we are also guided by the will of the people through the legislature. G.S. 1A-1, Rule 59(a) sets out nine grounds upon which the trial court may grant a new trial. Two of the grounds are applicable to this case, and we set them out below:

(6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

(7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law; . . .[2]

We recognize two separate and distinct standards "for determining what is a sufficient abuse of discretion to warrant a reversal of a trial court's ruling on a Rule 59 motion." *Howard v. Mercer*, 36 N.C. App. 67, 69, 243 S.E. 2d 168, 170, *disc. rev. granted*, 295 N.C. 466, 246 S.E. 2d 9 (1978) (petition withdrawn on motion by defendant). First, when a motion for a new trial has been denied, deference to the trial court and deference to the jury's determination combine and compel us to a restricted review of the trial court's ruling. However, under the second standard, when a motion for a new trial is granted, deference to the trial court's determination is counterbalanced by deference to

2. Prior to the enactment and effective date of the North Carolina Rules of Civil Procedure, G.S. Chapter 1A (effective 1 January 1970), trial judges could set aside a verdict and grant a new trial "upon exceptions, or for insufficient evidence, or for excessive damages" under the then existing law, G.S. 1-207.

the jury's determination of matters of fact. This court in *Howard* approved the following guidelines which were first set forth in *Taylor v. Washington Terminal Co.*, 409 F. 2d 145 (D.C. Cir.), *cert. denied*, 396 U.S. 835, 24 L.Ed. 2d 85, 90 S.Ct. 93 (1969)[3] for determining when an abuse of discretion has occurred:

> Where the jury finds a particular quantum of damages and the trial judge refuses to disturb its finding on the motion for a new trial, the two factors [the jury's determination and the judge's determination] press in the same direction, and an appellate court should be certain indeed that the award is contrary to all reason before it orders a remittitur or a new trial. However, where, as here, the jury as primary fact-finder fixes a quantum, and the trial judge indicates his view that it is excessive by granting a remittitur, the two factors oppose each other. The judge's unique opportunity to consider the evidence in the living courtroom context must be respected. But against his judgment we must consider that the agency to whom the Constitution allocates the fact-finding function in the first instance — the jury — has evaluated the facts differently.

> $\cdot$  $\cdot$  $\cdot$

> [W]e will reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was *clearly* within "the maximum limit of a reasonable range." 409 F. 2d at 147-149.

*Howard v. Mercer*, 36 N.C. App. at 70-71, 243 S.E. 2d at 171.

Our determination that the quantum of damages found by the jury was clearly within the "maximum limit of a reasonable range" is based on the following facts.

At the time of the accident, Worthington was sixty years of age and in good health; he had a life expectancy of 17.61 years. He was out of work a total of twenty-five and one-seventh weeks as a result of the accident, but did not sustain any loss of income. Worthington's major injuries can be summarized as follows:

---

3. The *Taylor* case was decided under Federal Rule 59 which is similar to North Carolina Rule 59.

1. Broken back—The left first lumbar vertebrae was fractured, and a spinal fusion was performed on 6 June 1977. Worthington was held motionless in a frame until approximately one month after the accident. At that time, he was placed in a body cast for approximately two months. Thereafter, Worthington was required to wear a Jewitt brace, a padded metal device that immobilizes the spine.

2. Cerebral concussion.

3. Contusions and abrasions of the left knee—The knee became infected, but was treated and required no surgery.

4. Tardy ulnar nerve palsy—As a likely result of either the accident or the lengthy bed rest required of him, Worthington developed tardy ulnar nerve palsy of the left hand, which initially caused severe loss of grip and loss of sensation in the left hand. Ultimately, Worthington's left elbow was operated on to relieve pressure on the nerve.

As a result of the accident, Worthington had to learn to walk again. He presently has difficulty doing some of the maintenance, repair work, and gardening around his house which he did prior to the accident, and he has to rest at work because he gets tired and hurts occasionally. As a result of the accident, Worthington has suffered a 30% permanent partial disability of his back; a 7% permanent partial disability of the left knee; and a 5% permanent partial disability of his left hand, including a permanently crooked little finger. Worthington's medical bills were $9,893.45. He was hospitalized for the periods of 23 May 1977 through 25 June 1977, 26 August 1977 through 1 September 1977, and 10 January 1978 through 12 January 1978.

At the time of the accident, Cogdell was forty-two years old and in good health. As a result of the accident, Cogdell was out of work twenty-four and one-seventh weeks but sustained no loss of income.

Cogdell suffered the following major injuries:

1. Broken neck—Cogdell suffered from a broken bone in his neck which required an operation involving a spinal fusion which included the removal of the disk between the C-6 and C-7 vertebrae. The disc was replaced with a bone from

Cogdell's hip. In order to immobilize Cogdell's neck, thirty to forty-pound metal tongs were placed in his skull. As a result of the spinal fusion and subsequent treatment, the vertebrae in his neck returned to the proper place and, although there was no damage to the spinal cord, there was injury to the nerve roots in Cogdell's neck. The metal tongs which were placed in Cogdell's head remained there for approximately one and one-half months during which time Cogdell could not move.

2. Neurological deficit of arm and hand—After the accident Cogdell suffered from a weak grip in both hands (at times his hands were numb) and from weak triceps in both arms.

As a result of the accident, Cogdell had to learn to walk again. He also suffered a 20% permanent partial disability of his whole person, including 20% permanent partial disability of his neck and 10% permanent partial disability of his right arm. The healed fusion in Cogdell's neck does not allow complete, normal neck movement. Indeed, his neck injury may cause degenerative arthritis. Even now, Cogdell experiences pain in his neck when he works, and the fingers on his right hand are always numb and have a tendency toward cramping. Further, as a result of the bone graft taken from his right hip, Cogdell suffered pain and discomfort in that area. Cogdell's medical bills totalled $7,740.65.

Applying the considerations outlined in *Howard* to the plaintiffs' cases, we hold that both verdicts were clearly within the maximum limits of a reasonable range. That, however, does not end the inquiry. When a motion is made under Rule 59(a)(6) an appellate court must also determine if the verdict was given under the influence of passion or prejudice. Defendant's argument on this issue is bottomed upon the trial court's statement just prior to entering the Order on 27 May 1980:

Gentlemen, I don't intend to catalog, but time and again I tried to instruct that jury to disregard things that seemed to me to be improper that kept coming up. It was an extremely volatile situation. I am satisfied that that jury completely disregarded many of my instructions. I don't understand that in view of all the evidence. It is my opinion that the verdict in each of the cases was excessive and I am, therefore, order-

ing Mr. Gaylord to prepare an order preparing [sic] a new trial as to each plaintiff.[4]

Defendant argues that the "improper" things that "kept coming up" were plaintiffs' efforts to get before the jury (1) evidence of their sex lives before and after the accident; (2) evidence that plaintiff Worthington lost teeth as a result of the accident; and (3) evidence suggesting that plaintiff Worthington had visual problems and psychiatric problems as a result of the accident. We have a two-fold response to defendant's argument: (1) the proffered evidence was admissible; and (2) the trial judge's feeling that the jury completely disregarded many of his instructions is not enough, standing alone, to support a conclusion that the verdicts were given under the influence of passion or prejudice.

We now address the allegedly improper things that kept coming up and demonstrate that the evidence which defendant now challenges was admitted (without objection), or was admissible, or was non-prejudicial.

a) Sexual Function

In instructing the jury the trial court said: "The question of sexual function was mentioned a few times . . . I instruct you that there is no evidence before you to this effect, and you are not to consider anything relating to sexual function [in arriving at your verdict] . . . ." First, we find from our review of the record, testimony relating to "sexual function" to which neither an objection was lodged nor a motion to strike made. For example, Dr. Timmons testified on direct examination: "I referred [plaintiff Cogdell] to Dr. Walsh and Dr. Gavigan because Jesse was complaining then of abnormal sex function." On cross-examination Dr. Timmons testified: "I also stated that the only problems are some persisting weakness in his right hand . . . and the diminution of

---

4. We note that the trial court expressed a different sentiment immediately after the jury had been excused and following defendant's motion to set the verdict aside on 16 May 1980. The trial court said: "I will tell you what I am going to do. I am going to consider this and am going to make a ruling at 2:00 p.m. Tuesday. I don't know whether you all would care to be present or not. I am going to be in Kinston and I will decide on this at that time. And if you all would be in touch with me it may be that you all would care to be heard further.

I would like to think about it a little bit. *That is what juries are for, but it is a fairly sizeable verdict. But, again, well within what they asked.*" (Emphasis added.)

sex function." Clearly, then, there was evidence before the jury
relating to sexual function. Second, the record does not fully sup-
port defendant's assertion that the trial court felt that evidence
of sexual function was incompetent. Indeed, all of record pages
170 and 171 deal with the following question: "Mr. Worthington,
will you describe your sex life with your wife *prior* to May 23,
1977?" The trial court on seven different occasions overruled the
objections. It was only because Mr. Worthington on each separate
occasion sought to tell about his sex life *after* the accident that
the trial court then sustained the objection and struck the answer
as being unresponsive. Finally, after the third unrecorded con-
ference at the bench on this matter, the Court said:

> Ladies and gentlemen, these last three questions and
> answers relating to sexual relations, the motions to strike are
> allowed and I instruct you that you are not to consider the
> questions and answers to those.

We cannot say, in view of the trial court's initial decision to admit
responsive answers to properly phrased questions relating to sex-
ual function and in view of the subsequently admitted testimony
relating to sexual function, that the trial court was convinced that
evidence of sexual function was incompetent.

Third, and more important, evidence of loss of "sexual func-
tion" is clearly relevant and should have been considered by the
jury. We reject outright defendant's argument that expert
medical testimony, that plaintiff's "sex life, or some part thereof,
could or might have been damaged on account of the injuries
received by him in the collision complained of," is needed.

b) Teeth

In instructing the jury, the trial court said: "[T]here has been
some reference made to Mr. Worthington's teeth. I instruct you
that you are not to consider such evidence in arriving at your ver-
dict in this case." During the trial, however, the following
transpired:

Q. [To Mrs. Worthington] You say two of his teeth were out?

A. That is right.

. . .

COURT: I believe I am going to—there is no evidence that they were not out before. I am going to sustain that. Don't consider that about the teeth.

[Mrs. Worthington continued]: I saw my husband that morning before he went to work and before he went to work he had all of his teeth. That night when I saw him I saw that two of his teeth were out and two were hanging.

While the trial court properly sustained an earlier objection that had initially been overruled because the question assumed a fact not in evidence, Mrs. Worthington later gave competent and relevant testimony about Mr. Worthington's loss of teeth. Consequently, the court should not have instructed the jury to disregard the references made to teeth. Defendant's argument that this evidence was improper because plaintiff Worthington did not mention loss of teeth in his Complaint or his Answers to Interrogatories is rejected.

c) Visual Problems and Psychiatric Problems

According to defendant, "[t]he jury could well have thought —and probably did—that since Dr. Sudor [an optometrist] testified regarding the sight of Mr. Worthington that some damage must have been sustained by Mr. Worthington with respect to his sight—else why would the doctor be testifying." We find no evidence in the record to suggest that defendant is doing anything more than speculating with respect to this argument. The trial court's instructions which follow are dispositive of this issue:

Likewise, there was evidence relating to Mr. Worthington's eyes. That evidence is admitted, as it may go to the reasonableness of the medical expenses incurred when Dr. Bowman referred him to Dr. White. But it has been stipulated, you will recall, members of the jury, that there were no damages to his eyesight as a result of the collision. So, of course, you would not consider any such evidence as damages in this case.

We find nothing in the record to suggest that the jury disregarded this instruction. And even if the jury disregarded this instruction, we do not see how such evidence could have increased the

verdicts which we have already found to be within the maximum limits of a reasonable range.

Defendant suggests that the jury may have been inflamed because plaintiff Worthington testified that "Dr. Bowman, during the time I was under his care, referred me to Dr. Robert Sammons." Although no objection or motion to strike the testimony was made at trial, defendant argues on appeal that "[t]hough no mention was made of Dr. Sammons' medical specialty, Greenville (N.C.) is a relatively small city and it is reasonable to assume that many persons serving on the jury knew Dr. Sammons to be a psychiatrist." We refuse to indulge in such speculation or surmise. Even if it is not a sufficient answer to say that defendant did not object to the testimony, it is clearly a sufficient answer to say that similar, and by defendant's obvious standard, more damaging testimony was given by Dr. Bowman himself. Dr. Bowman referred plaintiff Worthington to five different specialists and testified: "I also referred Mr. Worthington to Dr. Phillip Nelson *whose specialty is psychiatry*." (Emphasis added.)

We find no evidence to support or suggest (a) that the verdicts in these cases were given under the influence of either passion or prejudice; (b) that the jury disregarded the trial court's instructions; or (c) that the verdicts were contrary to law. Indeed, the amount of medical expenses, the severity and diversity of the injuries, the permanent disabilities, and the extensive evidence of pain and suffering of each plaintiff impel us to conclude that the verdicts were clearly within the maximum limit of a reasonable range. The fact that the jury considered its verdict for approximately thirty minutes simply shows the degree of unanimity as to the verdicts and adds emphasis to the fact that the jury unanimously believed that both Worthington and Cogdell had sustained substantial damages.

The trial court abused its discretion in setting aside the verdict for Cogdell in the amount of $150,000.00 and in setting aside the verdict for Worthington in the amount of $175,000.00. Therefore, we reverse and remand to the trial court for entry of judgment in accordance with the verdicts.

Reversed and remanded.

Judge WHICHARD concurs.

Judge MARTIN (Robert M.) dissents.

Judge WHICHARD concurring.

In my view, *Howard v. Mercer* controls the decision here. 36 N.C. App. 67, 243 S.E. 2d 168, *disc. rev. granted*, 295 N.C. 466, 246 S.E. 2d 9 (1978) (petition withdrawn on motion of defendant). That case establishes, as the standard for granting or denying a motion to set aside a verdict and order a new trial on the issue of damages, the test of whether the verdict was within the maximum limit of a reasonable range. If the verdict was within the maximum limit of a reasonable range, the motion should be denied. If not, the motion should be granted. Considering the evidence in the record here, I find the verdicts clearly within the maximum limit of a reasonable range; and consequently I vote with Judge Becton to reverse the judgment below, and I concur in his able opinion except as hereinafter stated.

I write this concurring opinion solely to state my view that under *Howard* it is no longer accurate to express the result of appellate review of trial court action on motions to set aside verdicts and grant new trials on the issue of damages in terms of the presence or absence of abuse of discretion. *Howard* establishes the legal test set forth above for determination of such motions. The trial court thus, in determining the motion, is not exercising its discretion. Rather, it is applying a legal standard. The appellate court is reviewing, not for abuse of discretion, but for error in applying the legal standard.

Judge (now Justice) Britt recognized this in *Howard* by stating the issue as "whether the trial court *erred* in setting aside the verdict" and the holding as "that the court *erred*." 36 N.C. App. at 68, 243 S.E. 2d at 169 (emphasis supplied). I believe that terminology is proper; and that to continue to speak in these cases in terms of abuse of discretion improperly perpetuates ancient language which the holding in *Howard* renders inapplicable and inaccurate.

MARTIN (Robert M.), Judge, dissenting.

In his order granting defendant's post-trial motions by setting aside the verdicts and granting defendants new trials on the

issues of damages, Judge Peel recited the grounds for defendants' motions as follows:

(1) That there was a manifest disregard by the jury of the instructions of the Court,

(2) Excessive damages appearing to have been given in each case under the influence of passion or prejudice, and

(3) The insufficiency of the evidence to justify the verdict in each case and that said verdict in each case is contrary to law.

While a trial court is not required to specify grounds for its order allowing a *litigant's* motion to set aside the verdict and grant a new trial, *Glen Forest Corp. v. Bensch,* 9 N.C. App. 587, 176 S.E. 2d 851 (1970), Judge Peel adopted the reasons stated in defendants' motions as his own by reciting them in his order and by giving no further or contrary reason for granting defendants' motions. The three grounds stated are listed in N.C. Gen. Stat. § 1A-1, Rule 59(a) in subsections (5), (6) and (7), respectively. Unless an abuse of discretion is shown, any *one* of these reasons justified Judge Peel's action in allowing defendants' motions.

As Chief Justice Sharp stated in *Britt v. Allen,* 291 N.C. 630, 635, 231 S.E. 2d 607, 611-612 (1977),

The adoption of the Rules of Civil Procedure (N.C. Sess. Laws 1967, ch. 954, § 4, effective 1 January 1970; N.C. Sess. Laws 1969, ch. 803, § 1) and the repeal of G.S. 1-207 (1953) did not diminish the trial judge's traditional discretionary authority to set aside a verdict. The procedure for exercising this traditional power was merely formalized in G.S. 1A-1, Rule 59, which lists eight specific grounds and one "catch-all" ground on which the judge may grant a new trial.

Chief Justice Sharp also stated, " '[t]he power of the court to set aside the verdict as a matter of discretion has always been inherent, and is necessary to the proper administration of justice.' *Bird v. Bradburn,* 131 N.C. 488, 489, 42 S.E. 936 (1902)." *Id.* at 634, 231 S.E. 2d at 611. This Court has held many times that a motion to set aside the verdict and for a new trial on grounds other than some question of law or legal inference which the judge decides is addressed to the sound discretion of the trial judge, whose ruling, in the absence of abuse of discretion, is not reviewable on appeal.

*Land Co. v. Wood,* 40 N.C. App. 133, 252 S.E. 2d 546 (1979); *Hoover v. Kleer-Pak,* 33 N.C. App. 661, 236 S.E. 2d 386, *rev. denied,* 293 N.C. 360, 237 S.E. 2d 848 (1977); *Board of Transportation v. Harvey,* 28 N.C. App. 327, 220 S.E. 2d 815 (1976); *Glen Forest Corp. v. Bensch, supra.*

The record discloses that after hearing evidence for five days, the jury determined the issues in thirty minutes. In my opinion the record does not show that the able and conscientious trial judge abused his discretion.

I vote to affirm.