CHARLES S. SCALLON, ADMINISTRATOR OF THE ESTATE OF LARRY ALAN AIKEN v. PHILLIP McINTYRE HOOPER AND CHARLES KENNETH CALDWELL

No. 8110SC1111

(Filed 3 August 1982)

**1. Rules of Civil Procedure § 68— offer of judgment—payment of costs**

Where an offer of judgment was made by defendant and served on 21 May 1979 and the judgment for plaintiff was for less than the sum offered, the trial court erred in taxing costs against the plaintiff up to and including 15 Oc-

tober 1979, since under G.S. 1A-1, Rule 68(a) the judgment should have
ordered the plaintiff to pay costs incurred only after 21 May 1979.

**2. Death § 7.7— wrongful death action—instruction on exemption of damages
from taxation**

It is reversible error for the trial court to instruct the jury that damages
awarded in a wrongful death action are exempt from federal and state income
taxes.

**3. Insurance § 104; Trial § 11— jury argument concerning insurance**

In a wrongful death action, defense counsel's argument to the jury that
defendant would be "legally obligated to pay every single dollar of [the] ver-
dict" and that the jury must deal "cautiously and fairly with the estate and the
property of" defendant was improper since it could have been interpreted by
the jury as meaning that defendant was not protected by automobile liability
insurance.

**4. Rules of Civil Procedure § 59; Trial § 52.1— new trial on issue of
damages—no abuse of discretion**

The trial court in a wrongful death action did not abuse its discretion in
setting aside a verdict for plaintiff of $10,000 and in granting a new trial on
the issue of damages on the ground that the verdict was "inadequate and con-
trary to the greater weight of the evidence."

APPEAL by plaintiff and defendants from *Godwin, Judge.*
Judgment entered 11 May 1981 in Superior Court, WAKE County.
Heard in the Court of Appeals 28 May 1982.

Plaintiff-administrator instituted this action to recover
damages for the alleged wrongful death of Larry Alan Aiken, who
died 1 July 1976, at the age of 22, as the result of a collision on 30
June 1976 in Long Beach, North Carolina.

At the time of the collision decedent was employed as a
Junior Engineer by Soils and Materials Engineers, Inc. He was
operating a pickup truck owned by his employer. Defendant
Hooper, aged 17, was operating a 1975 Pontiac convertible,
registered in the name of Charles K. Caldwell, but in the posses-
sion of his estranged wife, Janet A. Caldwell.

It was stipulated that the negligence of defendant Hooper
was the sole proximate cause of the death of plaintiff's intestate,
and that the Pontiac operated by defendant Hooper was
registered in the name of defendant Charles K. Caldwell.

In October 1979 at trial limited to the issues of agency and
damages, the jury answered the agency issue in favor of defend-

ant Caldwell and awarded plaintiff $1,000 for pain and suffering and $10,000 for the wrongful death. On motion of plaintiff the trial court set aside the $10,000 verdict for wrongful death and granted a new trial on that issue only, denying the motion to set aside the $1,000 verdict for pain and suffering. Plaintiff appealed, and this Court ordered a new trial for error related to the agency issue, reported in 49 N.C. App. 113, 270 S.E. 2d 496 (1980), *disc. rev. denied,* 301 N.C. 722, 276 S.E. 2d 284 (1981).

At the second trial in April 1981 the jury again returned a verdict in favor of defendant Caldwell on the agency issue and awarded plaintiff $17,500 for the wrongful death. After the plaintiff gave notice of appeal, defendants gave notice of appeal pursuant to Rule 3, Rules of Appellate Procedure, and assigned as error: (1) the granting by the trial court of plaintiff's motion for a new trial on the issue of damages after the first trial and (2) the taxation of court costs against the defendants.

*Bailey, Dixon, Wooten, McDonald & Fountain by Wright T. Dixon, Jr., Gary S. Parsons and Carson Carmichael, III, for plaintiff appellant-appellee.*

*Ragsdale & Liggett by George R. Ragsdale, Peter M. Foley, and John N. Hutson, Jr., for defendant appellees.*

CLARK, Judge.

[1] Plaintiff has twice appealed from judgments in his favor. His displeasure with the favorable judgments is perhaps explained by defendants' offer of judgment in the amount of $50,001.00 entered on 21 May 1979. The offer was not accepted by the plaintiff. We cannot ignore this offer of judgment and the substantial disparity which exists between the amount offered and the amounts of the jury verdicts because plaintiff and defendant have excepted and assigned error to that part of the judgment taxing against the plaintiff the costs incurred "up to and including the entry and indexing of judgment of Judge Hamilton Hobgood, setting aside the jury verdict returned in this case on October 15, 1979 . . . ." This provision in the judgment was based on G.S. 1A-1, Rule 68(a), which provides in pertinent part that if an offer to allow judgment is not accepted, and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must *pay*

*the costs incurred after the making of the offer."* (Emphasis added.)

The purpose of Rule 68 is to encourage settlements and avoid protracted litigation. The offer operates to save the defendant the costs from the time of that offer if the plaintiff ultimately obtains a judgment for less than the sum offered. 7-Pt. 2 Moore's Federal Practice and Procedure § 68.06 (2d ed. 1982).

Since in this case the offer was made and served on 21 May 1979 and the judgment was for less than the sum offered, the trial court erred in taxing costs against the plaintiff up to and including 15 October 1979. Under Rule 68(a) the judgment should have ordered the plaintiff to pay the costs incurred after 21 May 1979. However, we have determined that the judgment must be reversed and the case remanded again for a new trial. Thus, the assessment of costs by the trial court depends upon the judgment finally obtained by the plaintiff.

[2]  The plaintiff assigns as error the following instruction to the jury: "[Y]ou're to be aware that any recovery that may be had in this case . . . is not subject to income taxes either with the State or Federal Government."

The accuracy of the instruction is not challenged. For the federal exemption *see* Internal Revenue Code, § 104(a)(2), 26 U.S.C. § 104(a)(2), and *Norfolk and W. Ry. Co. v. Liepelt,* 444 U.S. 490, 62 L.Ed. 2d 689, 100 S.Ct. 755, *reh. denied,* 445 U.S. 972, 64 L.Ed. 2d 250, 100 S.Ct. 1667 (1980); and for the state exemption *see* G.S. 105-141(b).

Plaintiff argues that the instruction violates the collateral source rule, recognized in North Carolina, which refuses to allow the tort-feasor credit for the reasonable value of benefits to which he has contributed nothing. *Young v. R.R.,* 266 N.C. 458, 146 S.E. 2d 441 (1966); 22 Am. Jur. 2d *Damages* § 206 (1965); 5 Strong's N.C. Index 3d *Damages* § 10 (1977). On the other hand, defendant argues that the collateral source rule only applies to direct benefits received by an injured party in compensation for the injury, as in *Young, supra,* in which the court refused to allow credit on damages for medical expenses paid through an insurance policy carried by plaintiff's employer. Defendant relies on *Norfolk & W. Ry. Co. v. Liepelt, supra,* which held that the

refusal to instruct the jury that the award would not be subject to income taxes was reversible error because otherwise the jury would calculate a wrongful death award under the assumption that any award will be taxable to the recipient.

The question has never been specifically addressed by the North Carolina courts, but a majority of other jurisdictions have ruled that the incidence of income tax as it relates to the damages award in wrongful death cases should not be mentioned in instructions to the jury. Annot., 63 A.L.R. 2d 1393 (1959); 1 S. Speiser, *Recovery for Wrongful Death*, § 8:14 (1975).

The majority view is not within, but is closely related to, the collateral source rule. And the reason generally given by the courts in support of the majority view differs from that given to support the collateral source rule. The reason courts adopt the majority view of refusing to take income tax consequences into consideration in awarding damages for wrongful death is that the amount of a recipient's future income tax liability is too conjectural or speculative a factor. *Mitchell v. Emblade*, 80 Ariz. 398, 298 P. 2d 1034 (1956); *Atlantic Coast Line R. Co. v. Brown*, 93 Ga. App. 805, 92 S.E. 2d 874 (1956); *Hall v. Chicago & N. W. Ry. Co.*, 5 Ill. 2d 135, 125 N.E. 2d 77, 50 A.L.R. 2d 661 (1955); *Highshew v. Kushto*, 235 Ind. 505, 134 N.E. 2d 555 (1956); *Dempsey v. Thompson*, 363 Mo. 339, 251 S.W. 2d 42 (1952); *Smith v. Pa. R. Co.*, 47 Ohio Ops. 49, 99 N.E. 2d 501 (1950); *Dixie Feed & Seed Co. v. Byrd*, 52 Tenn. App. 619, 376 S.W. 2d 745 (1963), *appeal dismissed*, 379 U.S. 15, 13 L.Ed. 2d 84, 85 S.Ct. 147 (1964); and *see* cases compiled in A.L.R. 2d Later Case Service, Supplementing 63 A.L.R. 2d 1393.

In North Carolina the recovery in a wrongful death case is based largely on losses suffered by particular beneficiaries. G.S. 28A-18-1 and -18-2. The purpose of damages is to restore these beneficiaries to the position they would have occupied had there been no death. It would be inequitable to give the income tax exemption instruction to the jury without allowing evidence relative to the effect that the exemption would have on the future tax liability of each of the particular beneficiaries. And consideration of the taxation issue as it relates to each beneficiary would ordinarily involve abundant and intricate evidence and jury instructions on present and future tax and nontax liabilities of each

beneficiary. This would unduly complicate a wrongful death action, which is already complicated by our statute, G.S. 28-18-2, requiring many specific and some general elements to be considered in determining the present monetary value of the decedent to beneficiaries.

We adopt the majority view that it is reversible error for the trial court to instruct the jury that damages awarded in a wrongful death action are exempt from federal and state income taxes. We note that in the case *sub judice*, the tax exemption instruction was given to the jury by the trial court, apparently at the request of the defendant after all the evidence was presented and without prior notice to the plaintiff, who thus had no opportunity to present evidence relating to the effect of the income tax exemption on the various beneficiaries.

Having determined that the tax exemption instruction was reversible error which requires a new trial, we will determine the issues raised by those other assignments of error which may recur upon retrial, but upon finding error we do not determine whether the error would have been prejudicial.

[3] Plaintiff assigns as error defendant's argument to the jury, over his objection, that the defendant would be "legally obligated to pay every single dollar of [the] verdict . . ." and that the jury must deal "cautiously and fairly with the estate and the property of Phillip Hooper."

In a court of justice neither the wealth of one party nor the poverty of the other should be permitted to affect the administration of the law. *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955); *Yost v. Hall*, 233 N.C. 463, 64 S.E. 2d 554 (1951). During the trial of a case it is improper to mention insurance in either a positive or negative manner. *Spivey v. Wilcox Company*, 264 N.C. 387, 141 S.E. 2d 808 (1965); *Electric Company v. Dennis*, 259 N.C. 354, 130 S.E. 2d 547 (1963); 1 Stansbury's N.C. Evidence § 88 (Brandis rev. 1973); Annot., 4 A.L.R. 2d 761 § 4 (1949).

When this argument is considered in light of the agency issue—the jury found that defendant was not the agent of the registered owner of the automobile which defendant was operating—there is an implication, and the jury could reasonably

infer, that defendant had no insurance coverage and that the award of any substantial damages would constitute a significant burden on the young defendant. Plaintiff does not seek punitive damages. The wealth or poverty of the defendant is not an issue. The argument that defendant would be obligated to pay every single dollar of the damage award may be interpreted by the jury as meaning that defendant was not protected by automobile liability insurance. The accuracy of the argument is irrelevant. Insurance was not an issue, and the argument was unfair to the plaintiff and improper.

[4] The defendant argues that in the first trial the court abused its discretion in granting a new trial on the issue of damages. The court found that the award of $10,000 was "inadequate and contrary to the greater weight of the evidence." The defendant relies on *Worthington v. Bynum and Cogdell v. Bynum*, 53 N.C. App. 409, 281 S.E. 2d 166 (1981); and *Howard v. Mercer*, 36 N.C. App. 67, 243 S.E. 2d 168 (1978). In these two cases the Court of Appeals approved the rationale in *Taylor v. Washington Terminal Co.*, 409 F. 2d 145 (D.C. Cir.), *cert. denied*, 396 U.S. 835, 24 L.Ed. 2d 85, 90 S.Ct. 93 (1969), and reversed the trial court's granting of a new trial for excessive verdict when the quantum of damages found by the jury was clearly within "the maximum limit of a reasonable range." But *Bynum, supra*, was appealed to the Supreme Court of North Carolina, which overruled *Howard v. Mercer, supra*, reversed the Court of Appeals, and reinstated the trial court's order for a new trial, 305 N.C. 478, 290 S.E. 2d 599 (1982).

The *Bynum* decision is controlling and we find no abuse of discretion in the order of the trial court setting aside the damage award and granting a new trial.

The other assignments of error are not discussed since they are not likely to recur upon retrial.

The judgment is reversed, and we order a

New trial.

Judges WEBB and WHICHARD concur.