### STERN FISH COMPANY v. CHARLIE G. SNOWDEN.

(Filed 28 February, 1951.)

**1. Trial § 31b—Charge held for error as being misleading.**

Defendant admitted that plaintiff had advanced him $500.00 to be used in the purchase of fish for plaintiff's account, and set up a counterclaim in an amount in excess of $500.00 for fish purchased for plaintiff's account and for loading charges which plaintiff was required to pay under the contract. An instruction to the effect that if the jury should answer the issue as to defendant's indebtedness to plaintiff in any amount that the jury should not answer the issue as to the amount of indebtedness of plaintiff to defendant, *is held* reversible error, the action not being for an account stated, and the instruction being misleading upon the record.

**2. Trial § 31a—**

The purposes of the court's charge to the jury are the clarification of the issues, elimination of extraneous matters, and declaration and explanation of the law arising on the evidence in the case. G.S. 1-180.

APPEAL by defendant from *Halstead, Special Judge,* October Term, 1950, of PASQUOTANK.

Civil action to recover moneys deposited with defendant by plaintiff to cover price of fish purchased by defendant for plaintiff's account.

The plaintiff, a Philadelphia fish concern, engaged the defendant to purchase live carp for its account during the 1948 fishing season and store them in defendant's pond at Currituck, N. C. From there the plaintiff would send its trucks to pick them up and transport them to Philadelphia for sale.

Plaintiff's president testified: "Under the contract between me and Mr. Snowden we were to send our truck for such fish as he had purchased or caught and placed in the pond for our account at such times as we needed them. . . . Snowden, as our representative, purchased and weighed these fish and put them in the pond, and we owed him under our contract five and one quarter cents a pound for such carp so purchased. Our contract further called for reimbursing Mr. Snowden for the loading charges. I knew that in the ordinary course of events a certain percentage of live carp purchased for us would die before our trucks got there.

. . . I deposited with him a check for $500. This has never been returned."

The defendant admitted receipt of the deposit as alleged, and set up a counterclaim for $810.32 to cover live fish purchased for plaintiff's account and not paid for by plaintiff.

Defendant testified: "Under date of May 4, 1948 Stern Fish Company owed me for 14,768 pounds at a contract price of five and a quarter cents, a total of $775.32. On May 4, 1948, it likewise owed me $35.00 loading charges, making a total of $810.32. Stern Fish Company has never paid me that amount, which represents fish purchased for their account under the contract. I gave them credit for $500.00 as represented by their $500.00 deposit with me. There remained due $310.32. On May 4, 1948 I sent Stern Fish Company a bill for that amount."

Upon denial of liability and assertion of counterclaim, the jury returned the following verdict:

"1. Is the defendant indebted to the plaintiff, as alleged in the complaint, and if so, in what amount? Answer: $500.00.

"2. Is the plaintiff indebted to the defendant, as alleged in the answer, and if so, in what amount? Answer: Nothing."

From judgment on the verdict, the defendant appeals, assigning errors.

*Wilson & Wilson for plaintiff, appellee.*
*McMullan & Aydlett for defendant, appellant.*

STACY, C. J. The following excerpt from the charge forms the basis of one of defendant's exceptive assignments of error and appears too wide of the mark to be sustained under any rule of interpretation or construction:

"Gentlemen of the Jury, now each one cannot be indebted to the other, to the extent of your answering both of these issues in some amount for each of these parties. If you answer the first issue, that is: Is the defendant indebted to the plaintiff as alleged in the complaint, and if so, in what amount? Why then, Gentlemen, the second issue, you'd answer that nothing, because if the defendant is indebted to the Fish Company, then the Fish Company certainly is not indebted to the defendant."

Apparently the court had in mind and intended to say, that in arriving at a proper adjustment of the account between the parties, consisting, as it does, of debits on the one side and credits on the other, there could be but one correct balance, either in favor of the plaintiff or the defendant, but not in favor of both. Unfortunately, however, the action is not for an account stated, *Hawkins v. Long,* 74 N.C. 781, but to recover an advanced deposit, with a counterclaim interposed by the defendant on open account, and the court's language is hardly susceptible of this single

interpretation, if really capable of such construction at all. The defendant may have intended to make his counterclaim an account stated in the statement rendered 4 May, 1948, but he omits so to allege or to testify. *Copland v. Telegraph Co.,* 136 N.C. 11, 48 S.E. 501; 1 Am. Jur. 272. The jury is told in so many words that if they answer the first issue in any amount, their answer to the second issue would be nothing, and conversely by inference, if they answer the second issue in any amount, their answer to the first issue would be nothing. This left the jury with very little choice, since the defendant had admitted in his answer that he received the $500 advanced by the plaintiff. Indeed, the only controverted issue in the case was that raised by the defendant's counterclaim. If the defendant recover nothing on his counterclaim, the plaintiff would be entitled to judgment on the pleadings for his advanced deposit of $500. In the light of the transcript, the instruction appears misleading, if not confusing.

The chief purposes to be attained or accomplished by the court in its charge to the jury are clarification of the issues, elimination of extraneous matters, and declaration and explanation of the law arising on the evidence in the case. G.S. 1-180 as rewritten in 1949, S.L. Chap. 107; *Irvin v. R. R.,* 164 N.C. 6, 80 S.E. 78. These are essential in cases requiring the intervention of a jury. As was said by *Merrimon, C. J.,* in *S. v. Wilson,* 104 N.C. 868, 10 S.E. 315, "The jury should see the issues, stripped of all redundant and confusing matters, and in as clear a light as practicable," and by *Barnhill, J.,* in *S. v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751, "The chief object contemplated in the charge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved." Accordant: *S. v. Sutton,* 230 N.C. 244, 52 S.E. 2d 921; *S. v. Jackson,* 228 N.C. 656, 46 S.E. 2d 858; *Guyes v. Council,* 213 N.C. 654, 197 S.E. 121; *S. v. Rogers,* 93 N.C. 523; *S. v. Jones,* 87 N.C. 547; *S. v. Matthews,* 78 N.C. 523; *S. v. Dunlop,* 65 N.C. 288; *Bird v. United States,* 180 U.S. 356, 45 L. Ed. 570.

A new trial seems necessary. It is so ordered.

New trial.