RHEINBERG-KELLEREI GMBH v. VINEYARD WINE COMPANY, INC.

No. 8026SC1192

(Filed 1 September 1981)

1. **Uniform Commercial Code § 16— purchase of wine—shipment contract**

    In an action to recover the purchase price of a shipment of wine sold by plaintiff to defendant, the contract in question was a "shipment" contract, i.e., one not requiring delivery of the wine at any particular destination.

2. **Uniform Commercial Code § 16— shipment from foreign country—notice to buyer—risk of loss**

    In an action to recover the purchase price of a shipment of wine sold to defendant and lost at sea en route between Germany and the U.S., the trial court properly concluded that plaintiff's failure to notify defendant of the shipment until after the sailing of the ship and the ensuing loss was not "prompt notice" within the meaning of G.S. 25-2-504, and the risk of loss therefore did not pass to defendant upon delivery of the wine to the carrier pursuant to the provisions of G.S. 25-2-509(1)(a).

APPEALS by plaintiff and defendant from *Owens, Judge.* Judgment entered 7 October 1980 in Superior Court, MECKLEN-BURG County. Heard in the Court of Appeals 28 May 1981.

Plaintiff, a West German wine producer and exporter, instituted this action to recover the purchase price of a shipment of wine sold to defendant and lost at sea en route between Germany and the United States. Subsequent to a hearing, the court, sitting without a jury, made the following findings of fact.

Plaintiff is a West German corporation engaged in the business of producing, selling, and exporting wine. Defendant, a North Carolina corporation, is a distributor of wine, buying and selling foreign and domestic wines at wholesale. Frank Sutton, d/b/a Frank Sutton & Company and d/b/a The Empress Importing Company, and other names, of Miami Beach, Florida, is a licensed importer and seller of wines. During 1978-1979 Sutton served as an agent for plaintiff and was authorized to sell and solicit orders for plaintiff's wine in the United States. During 1978 and early 1979, Randall F. Switzer, then of Raleigh, North Carolina, was a broker soliciting orders of wine on behalf of several producers and brokers, including Sutton, on a commission basis.

During the summer of 1978, Switzer, on behalf of Frank Sutton, began to solicit orders from prospective customers in North Carolina for wines produced by plaintiff. He contacted Bennett Distributing Company in Salisbury, North Carolina and the defendant in Charlotte, North Carolina, soliciting orders for sale through Sutton of wine produced by plaintiff to be shipped from West Germany consolidated in one container. Switzer, in late August 1978, called the office of Sutton in Miami Beach, Florida, reporting that he had secured orders from Bennett Distributing Company and defendant for 625 cases and 620 cases, respectively, of plaintiff's wines. Switzer then mailed to Sutton a copy of the proposed orders. Switzer also left a copy of the proposed order by defendant with the defendant's sales manager.

On 25 August 1978, the office of Sutton prepared a written confirmation of the orders and mailed them to defendant. Defendant received the written confirmation of orders, but never gave written notice of objection to the contents thereof to plaintiff or plaintiff's agent, Sutton. Written confirmation of the orders together with "Special Instructions" which reflected the instructions to plaintiff regarding the proposed consolidated shipment, were mailed to the plaintiff in West Germany on or about 25 August 1978.

According to the stated prices for the wine, the purchase price of the 620 cases of wine ordered by the defendant was 15.125,00 German marks. On 15 September 1980, the rate of exchange of German marks to United States dollars was such that one German mark equals $.57. Therefore, the purchase price of the 620 cases of wine, 15.125,00 German marks, equals $8,621.25.

Between August and December 1978, defendant's president, Cremilde D. Blank, and Switzer made telephone inquiries to Sutton concerning the status of the wine orders, but were not furnished any information concerning when and how the wine would be shipped or when and where it would arrive. On or about 8 November 1978, Mrs. Blank telephoned Sutton's office and obtained certain details concerning the consolidated order and then wrote to Bennett Distributing Company. Thereafter, in November 1978, Bennett Distributing Company informed Mrs. Blank that it had cancelled its order with the plaintiff, and Switzer thereafter attempted to resell Bennett's share of the order.

On or about 27 November 1978, plaintiff issued notice to Sutton giving the date of the shipment, port of origin, vessel, estimated date of arrival and port of arrival. Sutton did not give any of such information to defendant or to Switzer and did not notify defendant of anything. There was never any communication of any kind between plaintiff and defendant, and defendant was not aware of the details of the shipment.

Plaintiff delivered the wine ordered by defendant, consolidated in a container with the other wine, to a shipping line on 29 November 1978, for shipment from Rotterdam to Wilmington, North Carolina, on board the *MS Munchen.* Defendant did not request the plaintiff to deliver the wine order to any particular destination, and plaintiff and its agent, Sutton, selected the port of Wilmington for the port of entry into the United States. The entire container of wine was consigned by plaintiff to defendant, with freight payable at destination by defendant.

After delivering the wine to the ocean vessel for shipment, plaintiff forwarded the invoice for the entire container, certificate of origin and bill of lading, to its bank in West Germany, which forwarded the documents to Wachovia Bank and Trust Company, N.A., in Charlotte, North Carolina. The documents were received by Wachovia on 27 December 1978. The method of payment for the sale was for plaintiff's bank in West Germany to send the invoice, certificate of origin and bill of lading, to Wachovia whereupon defendant was to pay the purchase price to Wachovia and obtain the shipping documents. Wachovia then would forward payment to plaintiff's bank, and defendant could present the shipping documents to the carrier to obtain possession.

Wachovia mailed to defendant on 29 December 1978, a notice requesting payment for the entire consolidated shipment, by sight draft in exchange for documents. The notice was not returned by the Post Office to the sender.

On or about 24 January 1979, defendant first learned that the container of wine had left Germany in early December 1978 aboard the *MS Munchen*, which was lost in the North Atlantic with all hands and cargo aboard between 12 December and 22 December 1978.

Defendant did not receive any wine from plaintiff and did not pay Wachovia for the lost shipment. Plaintiff released the sight draft documents to Frank Sutton. Defendant was not furnished with any copy of said documents until receiving some in March and April 1979 and the others through discovery after this action was filed.

The order and "Special Instructions", mailed by Sutton to plaintiff, but not to defendant, provided *inter alia:* (1) "Insurance to be covered by purchaser"; (2) "Send a 'Notice of Arrival' to both the customer and to Frank Sutton & Company"; and (3) "Payment may be deferred until the merchandise has arrived at the port of entry."

Based upon the foregoing findings of fact, the trial court made the following pertinent conclusions of law:

2. The defendant agreed to purchase 620 cases of wine from the plaintiff through its agent or broker, Frank Sutton, in late August 1978.

3. Plaintiff failed to comply with G.S. 25-2-504, which provides:

"Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must. . .

"(c) promptly notify the buyer of the shipment."

4. The purpose of such notification requirement is so the buyer (as defendant in this instance would have been) may make necessary arrangements for cargo insurance and otherwise to protect itself against any ensuing loss.

5. The plaintiff failed to deliver any such notice to defendant herein prior to the sailing of the ship and the ensuing loss. While plaintiff gave such notice to its agent, Frank Sutton did not pass such information on to defendant, so defendant was unaware of details vital to securing cargo insurance or otherwise protecting itself against loss in transit. The mailing of documents after shipment to Wachovia Bank & Trust Company, N.A. to collect the invoice amount plus freight and charges from defendant by sight draft, of which defendant was unaware until some weeks after the loss of the ship was not prompt notice to the defendant as required by the above statute.

6. Risk of loss of the wine therefore did not pass from the plaintiff to defendant upon delivery of the container of wine to the carrier, as provided in G.S. 25-2-509(1)(a).

7. Plaintiff is not entitled to recover any amount from the defendant due to such lack of notice.

From judgment in favor of the defendant, dismissing plaintiff's action, both plaintiff and defendant have appealed.

*Williams, Kratt & Parker, by Neil C. Williams, for plaintiff-appellant.*

*Caudle, Underwood & Kinsey, P.A., by Lloyd C. Caudle and Donald M. Etheridge, Jr., for defendant-appellee.*

WELLS, Judge.

The first question presented by plaintiff's appeal is whether the trial court was correct in its conclusion that the risk of loss for the wine never passed from plaintiff to defendant due to the failure of plaintiff to give prompt notice of the shipment to defendant. Plaintiff made no exceptions to the findings of fact contained in the judgment and does not contend that the facts found were unsupported by the evidence. Our review on appeal is limited to a determination of whether the facts found support the court's conclusions and the judgment entered. Rule 10(a), N.C. Rules of Appellate Procedure; *Swygert v. Swygert,* 46 N.C. App. 173, 180-181, 264 S.E. 2d 902, 907 (1980).

[1] All parties agree that the contract in question was a "shipment" contract, *i.e.,* one not requiring delivery of the wine at any

particular destination. *See* J. White & R. Summers, Uniform Commercial Code § 5-2, at 140-42 (1972). The Uniform Commercial Code, as adopted in North Carolina, dictates when the transfer of risk of loss occurs in this situation. G.S. 25-2-509(1)(a) provides, in pertinent part:

> *Risk of loss in the absence of breach.* — (1) Where the contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation (25-2-505). . . .

Before a seller will be deemed to have "duly delivered" the goods to the carrier, however, he must fulfill certain duties owed to the buyer. In the absence of any agreement to the contrary, these responsibilities, set out in G.S. 25-2-504, are as follows:

> *Shipment by seller.* — Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must

> (a) put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case; and

> (b) obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of trade; and

> (c) promptly notify the buyer of the shipment. Failure to notify the buyer under paragraph (c) or to make a proper contract under paragraph (a) is a ground for rejection only if material delay or loss ensues.

[2] The trial court concluded that the plaintiff's failure to notify the defendant of the shipment until after the sailing of the ship and the ensuing loss, was not "prompt notice" within the meaning of G.S. 25-2-504, and therefore, the risk of loss did not pass to defendant upon the delivery of the wine to the carrier pursuant to the provisions of G.S. 25-2-509(1)(a). We hold that the conclu-

sions of the trial court were correct. The seller is burdened with special responsibilities under a shipment contract because of the nature of the risk of loss being transferred. *See* W. Hawkland, 1 A Transactional Guide to the U.C.C. § 1.2104, at 102-107 (1964). Where the buyer, upon shipment by seller, assumes the perils involved in carriage, he must have a reasonable opportunity to guard against these risks by independent arrangements with the carrier. The requirement of prompt notification by the seller, as used in G.S. 25-2-504(c), must be construed as taking into consideration the need of a buyer to be informed of the shipment in sufficient time for him to take action to protect himself from the risk of damage to or loss of the goods while in transit. *But see* J. White & R. Summers, Uniform Commercial Code § 5-2, fn. 12 (1972). It would not be practical or desirable, however, for the courts to attempt to engraft onto G.S. 25-2-504 of the U.C.C. a rigid definition of prompt notice. Given the myriad factual situations which arise in business dealings, and keeping in mind the commercial realities, whether notification has been "prompt" within the meaning of U.C.C. will have to be determined on a case-by-case basis, under all the circumstances. *See* W. Hawkland, 1 A Transactional Guide to the U.C.C. § 1.2104, at 106 (1964).

In the case at hand, the shipment of wine was lost at sea sometime between 12 December and 22 December 1978. Although plaintiff did notify its agent, Frank Sutton, regarding pertinent details of the shipment on or about 27 November 1978, this information was not passed along to defendant. The shipping documents were not received by defendant's bank for forwarding to defendant until 27 December 1978, days after the loss had already been incurred. Since the defendant was never notified directly or by the forwarding of shipping documents within the time in which its interest could have been protected by insurance or otherwise, defendant was entitled to reject the shipment pursuant to the term of G.S. 25-2-504(c).

In its final assignment of error plaintiff asserts that the trial court erred in not imposing a constructive trust upon money received by defendant from a third party in connection with the remarketing of a canceled portion of the wine order. This issue was not presented in the pleadings nor does the record reveal that the issue was raised at trial. Plaintiff cannot now present this theory on appeal. *Baer v. Davis*, 47 N.C. App. 581, 582, 267

S.E. 2d 581, 582, *disc. rev. denied,* 301 N.C. 85, 273 S.E. 2d 296 (1980); *Men's Wear v. Harris,* 28 N.C. App. 153, 156, 220 S.E. 2d 390, 392 (1975), *disc. rev. denied,* 289 N.C. 298, 222 S.E. 2d 703 (1976).

We do not reach the assignments of error presented by defendant. Since by our decision we have left undisturbed the judgment in defendant's favor, it is not a party aggrieved and therefore may not appeal. G.S. 1-271; *Boone v. Boone,* 27 N.C. App. 153, 218 S.E. 2d 221 (1975).

In the plaintiff's appeal, the judgment is

Affirmed.

In the defendant's appeal, the appeal is

Dismissed.

Judges HEDRICK and MARTIN (H.) concur.