MARY M. WILLIAMS, ADMINISTRATRIX C.T.A. OF THE ESTATE OF CHARLENE WILLIAMS WITHERSPOON, PLAINTIFF v. CLYDE C. RANDOLPH, JR., DEFENDANT

No. 8821SC976

(Filed 5 July 1989)

1. **Attorneys at Law § 7.1— administration of estate—recovery of legal fee—judgment n.o.v. for defendant attorney—error**

     The trial court erred in entering judgment notwithstanding the verdict for defendant attorney in an action in which plaintiff administratrix sought to recover a $98,000 legal fee paid by defendant to his firm for representing plaintiff in the recovery of proceeds from a life insurance policy issued to decedent. The evidence, taken in the light most favorable to plaintiff, was sufficient to require that the issue of reasonableness of the fee be sent to the jury where decedent was issued a life insurance policy for $500,000 less than seven months before her death, with an additional $200,000 accidental death benefit; decedent was shot and killed under suspicious circumstances and newspaper reports linked her death to her alleged trade in narcotic drugs; the estate had no liquid assets and was in jeopardy of losing substantial real estate assets unless the estate could quickly collect on the Nationwide insurance policy; defendant began serving as the attorney for the estate without mentioning hourly rates, although defendant told plaintiff that the number of hours expended was an important consideration, and without disclosing or agreeing on additional fees for filing a lawsuit against Nationwide; Nationwide's initial position was that it was not liable because of material misrepresentations by decedent on her insurance application; Nationwide later offered to settle for $700,000; plaintiff in the meantime had suffered a heart attack and had executed a power of attorney authorizing defendant and his partner to enter into a settlement, to deposit the proceeds into an interest bearing account, and to make disbursements

WILLIAMS v. RANDOLPH

[94 N.C. App. 413 (1989)]

as necessary for the reasonable and necessary expenses of the estate; defendant and his partner met with plaintiff to discuss the legal fee; plaintiff did not approve of the fee; defendant withdrew the fee from the settlement account; and plaintiff presented evidence that the fee was unreasonable while defendant presented evidence that it was reasonable.

**2. Trial § 51— administration of estates—action to recover legal fee—conditional new trial**

The trial court did not abuse its discretion in an action by the administratrix of an estate to recover an allegedly unreasonable legal fee by conditionally allowing defendant a new trial where, although plaintiff's evidence was sufficient to go to the jury, it could not be said from the record that the judge abused his discretion in determining that the greater weight of credible evidence would not support the verdict returned by the jury. The trial judge is not required to take the testimony of any witness at face value on a motion to set aside a verdict as being against the greater weight of credible evidence.

**3. Fiduciaries § 1— estate administration—power of attorney— payment of legal fee**

The trial court did not err by dismissing plaintiff administratrix's claim that defendant breached his duty under the Uniform Fiduciaries Act by paying an allegedly excessive legal fee to his law firm. Plaintiff's argument that the definition of fiduciary in N.C.G.S. § 32-2 applies to N.C.G.S. § 32-34(a) is not supported by the statute; moreover, the fact situation in this case is distinguishable from that contemplated by N.C.G.S. § 32-34(a) in that defendant held a power of attorney to make disbursements for the reasonable and necessary expenses of the estate, and not the power to make discretionary disbursements of principal or income prohibited by N.C.G.S. § 32-34(a).

**4. Executors and Administrators § 37.1— payment of legal fee— not approved by clerk—no error**

The trial court properly granted a directed verdict for defendant attorney on plaintiff administratrix's claim that defendant violated N.C.G.S. § 32-51 by not having the clerk of superior court approve a legal fee disbursed to his firm where defendant was not serving as the fiduciary or personal repre-

sentative of the estate, but as the attorney for the personal representative.

**5. Attorneys at Law § 7— action to recover legal fee—instructions—no error**

There was no error in the instructions in an action by plaintiff administratrix to recover an allegedly excessive legal fee where plaintiff requested an instruction that defendant had the burden of proof on whether plaintiff had full knowledge of all material facts before entering into a fee agreement; both parties conceded that plaintiff and defendant did not enter into a contingent fee contract and there was no issue between the parties as to a contingent fee contract; and the court gave an instruction on establishing a reasonable fee which was based on the N.C. Code of Professional Responsibility and which included all of the factors in plaintiff's proposed instruction, but which did not emphasize the number of hours spent on the case.

**6. Attorneys at Law § 7.1— action to recover excessive legal fee—failure to instruct on contingent fee—no instruction on determining excessive fee—no error**

The trial court did not err in an action by an administratrix to recover an excessive legal fee by failing to instruct that, in order for a contingent fee to be proper, there must be real uncertainty as to whether there will be a recovery at the time of the agreement because the parties never entered into a contingent fee contract. Moreover, the court did not err by instructing that a fee is clearly excessive when a lawyer of ordinary prudence experienced in the area of the law involved would be left with a definite and firm conviction that the fee was in excess of a reasonable fee because the instruction was a verbatim restatement of the Code of Professional Responsibility on the issue of attorney's fees.

**7. Attorneys at Law § 7.1— action to recover excessive legal fees—manner in which issues framed for jury—no error**

The trial court did not err in an action by an administratrix to recover allegedly excessive legal fees in the manner in which it framed the issues for the jury. Although plaintiff contended that the court erred by not including the question of whether defendant made full disclosure of all facts relevant to the reasonableness of the fee before plaintiff agreed to

WILLIAMS v. RANDOLPH

[94 N.C. App. 413 (1989)]

the fee, the issue arising from the evidence was whether the amount charged was fair and reasonable and the trial court properly narrowed the issue and instructed the jury on the burden of proof on that issue.

8. **Witnesses § 6.2 — contested legal fees — defendant attorney's reputation as to truthfulness — admissible**

The trial court did not err in an action by an administratrix to recover allegedly excessive legal fees by admitting testimony of defendant attorney's reputation as to truthfulness from defendant's character witnesses where plaintiff failed to make timely objection to the testimony and where plaintiff's evidence placed defendant's reputation for truthfulness in issue. N.C.G.S. § 8C-1, Rule 608(a) allows evidence of truthful character after the witness's character for truthfulness has been attacked; also, a lawyer's reputation is a factor to be considered under Rule 2.6(B)(7) of the Rules of Professional Conduct.

APPEAL by plaintiff from *Rousseau (Julius A., Jr.), Judge.* Judgment entered 22 April 1988 in Superior Court, FORSYTH County. Heard in the Court of Appeals 12 April 1989.

This is an action brought by plaintiff, administratrix, c.t.a. of the estate of Charlene Williams Witherspoon, to recover from defendant a $98,000.00 legal fee paid by defendant to his firm for representation of plaintiff administratrix in an action to recover the proceeds of a life insurance policy issued on the life of decedent. On account of ill health, plaintiff had executed a power of attorney authorizing defendant to compromise and settle the claim which the estate held against Nationwide Insurance Company (herein "Nationwide") and to place the proceeds of the settlement in a separate savings account in trust for the estate. The proceeds from the claim against Nationwide were collected and deposited on 21 November 1984. On 20 February 1985 defendant withdrew from the account $98,000.00 in payment for legal services rendered to plaintiff.

In her complaint plaintiff alleges: (i) that defendant violated his fiduciary duty to plaintiff because the payment was unauthorized and the amount was grossly excessive; (ii) that defendant's breach of his fiduciary duty violated the Uniform Fiduciaries Act, G.S. § 32.1 *et seq.*, and (iii) in the alternative, if there was an agreement between plaintiff and defendant as to the $98,000.00

WILLIAMS v. RANDOLPH

[94 N.C. App. 413 (1989)]

payment that the agreement was unconscionable and unreasonable because it was disproportionate to the services rendered and/or a breach of fiduciary duty because defendant failed to disclose to plaintiff all material facts necessary for a determination of a fair and reasonable fee.

At trial defendant moved for a directed verdict at the close of all the evidence. The motion was denied. Two issues were submitted to the jury: (i) "Was the attorney's fee paid by plaintiff to defendant fair and reasonable?" and (ii) "If not, what is a fair and reasonable fee?" The jury determined that $98,000.00 was not a fair and reasonable fee and that a fair and reasonable fee in the present case was $30,000.00. Pursuant to G.S. 1A-1, Rule 50(b)(1), defendant moved for entry of judgment notwithstanding the verdict on the grounds that plaintiff's evidence was insufficient to support the verdict as a matter of law, or, alternatively, for an order setting aside the verdict in the discretion of the court and granting a new trial.

The trial judge allowed defendant's motion for judgment notwithstanding the verdict and, alternatively, granted a new trial should the judgment for defendant be reversed on appeal.

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Marion G. Follin, III, for plaintiff-appellant.*

*Nichols, Caffrey, Hill, Evans and Murrelle, by William D. Caffrey, for defendant-appellee.*

PARKER, Judge.

On appeal plaintiff has grouped her assignments of error into five arguments. Plaintiff contends the trial court erred (i) in entering judgment notwithstanding the verdict, (ii) in granting defendant's conditional motion for a new trial, (iii) in dismissing plaintiff's claim that defendant violated the Uniform Fiduciaries Act, (iv) in instructing the jury and (v) in admitting testimony as to defendant's character for truthfulness. We address separately each of plaintiff's contentions.

[1] In reviewing the trial court's entry of judgment notwithstanding the verdict, we note at the outset that the defendant-attorney in this action had the burden of proving that the fee charged to plaintiff-client was fair and reasonable. *Rock v. Ballou*, 286 N.C. 99, 104, 209 S.E. 2d 476, 478 (1974); *Randolph v. Schuyler*, 284

N.C. 496, 504, 201 S.E. 2d 833, 838 (1974). For this reason the Court must closely scrutinize the granting of defendant's motion for judgment notwithstanding the verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E. 2d 333, 338 (1985).

A motion for judgment notwithstanding the verdict is essentially a renewal of an earlier motion for a directed verdict which tests the sufficiency of the evidence to submit an issue to the jury. *Id.* at 368-69, 329 S.E. 2d at 337. As such, the trial court must consider all the evidence in the light most favorable to the non-movant and must resolve in favor of the non-movant contradictions, conflicts and inconsistencies in the evidence. *Id.* at 369, 329 S.E. 2d at 337; *Rappaport v. Days Inn*, 296 N.C. 382, 384, 250 S.E. 2d 245, 247 (1979). Additionally, the non-movant must be given the benefit of all relevant evidence even where such evidence was improperly admitted. *Haney v. Alexander*, 71 N.C. App. 731, 733-34, 323 S.E. 2d 430, 432 (1984), *cert. denied*, 313 N.C. 329, 327 S.E. 2d 889 (1985); *Hart v. Warren*, 46 N.C. App. 672, 678, 266 S.E. 2d 53, 57-58, *disc. rev. denied*, 301 N.C. 89 (1980).

Plaintiff contends that the evidence presented, when taken in the light most favorable to her, was sufficient to take to the jury the issue of whether defendant's fee was reasonable. In order to determine whether the evidence presented was, in fact, sufficient for the issue to be decided by the jury, we must review in some detail the evidence in the record.

Several years before her death, Charlene Williams Witherspoon executed a will prepared by defendant which included a specific bequest of $50,000.00 to Mary M. Williams, decedent's mother. The will also named decedent's father, Charlie Mack Williams, and decedent's son, Roderick Tyronda Witherspoon, as residual beneficiaries.

On 7 December 1983, Nationwide issued a policy insuring the life of decedent in the face amount of $500,000.00. The policy also provided an additional $200,000.00 accidental death benefit. Less than seven months later, as she was leaving a parking lot at Heather Hills Condominium Development in Winston-Salem, North Carolina, on 12 April 1984, decedent was shot through the window of her car and killed. The circumstances of decedent's death were suspicious, and police and newspaper accounts reported that decedent's death was linked to her alleged trade in narcotic drugs.

WILLIAMS v. RANDOLPH

[94 N.C. App. 413 (1989)]

At the time of her death, decedent's estate consisted primarily of real estate valued at approximately $405,300.00 and the $700,000.00 Nationwide policy. With other assets, the total estate was $1,198,829.46. All the real estate was heavily mortgaged, and decedent was behind in her payments on some of the mortgages. Moreover, the income from rented properties was not sufficient to maintain the mortgage payments. Decedent was also delinquent on both State and federal tax obligations. In short, the estate had no liquid assets and was in jeopardy of losing substantial real estate assets unless the estate could quickly collect on the Nationwide policy.

In late April 1984 defendant began serving as the attorney for decedent's estate. At this time defendant generally discussed with plaintiff attorney fees to be charged to the estate. He did not mention hourly rates, but told plaintiff that the number of hours spent was an important consideration in the cost of services. There was no discussion of, or agreement on, additional fees for filing a lawsuit against Nationwide. As attorney for the estate, defendant began proceedings to qualify plaintiff as administratrix, c.t.a. and to collect on the Nationwide policy.

Defendant's efforts to collect on the life insurance policy entailed meeting with Nationwide's agents, collecting and forwarding information to Nationwide, instituting a civil action against Nationwide, which required preparing various pleadings including a complaint, a set of interrogatories, a request for production of documents, a motion to amend the complaint and amended complaint, a motion for judgment on the pleadings and a calendar request, and negotiating with attorneys for Nationwide. These efforts were necessitated by Nationwide's initial position that it was not liable on its policy on account of material misrepresentations by decedent on her insurance application. On the application decedent had denied that she used narcotic drugs and that she had previously been denied life insurance coverage by another carrier. Nationwide had information to the contrary and, based on this information, attorneys for Nationwide indicated to defendant that the Company was prepared to fight the case through the courts. On 12 October 1984, however, Nationwide offered to settle for $700,000.00.

Plaintiff in the meantime had suffered a heart attack and was still recuperating. For this reason, plaintiff executed a power of attorney on 5 November 1984 authorizing defendant and his part-

ner, David Tamer, to enter into a settlement with Nationwide, to receive the settlement proceeds and deposit them into an interest bearing account with defendant and Tamer as authorized signatories, and to make disbursements from this account for the reasonable and necessary expenses of the estate. On 16 November 1984 plaintiff signed a release and settlement of claims for the insurance proceeds. On 19 November 1984 Mr. Tamer received the proceeds from the policy and filed a notice of dismissal in the action against Nationwide, and on 21 November 1984 defendant opened an account in the name of the estate and deposited the proceeds into the account. The evidence showed that defendant and other members of his firm spent fifty-one hours handling the Nationwide litigation.

On 27 November 1984 defendant and Mr. Tamer met with plaintiff. At that time defendant presented plaintiff with a statement for $21,483.33 for services rendered by the law firm through 19 November 1984 exclusive of the work done on the Nationwide matter. Defendant then discussed with plaintiff the Nationwide litigation, detailing the work performed but not the hours expended. Defendant explained that he believed that $98,000.00 was a reasonable fee for this service based on the factors set out in DR 2-106 of the Code of Professional Responsibility and based on the fact that the payment of any legal fees for the estate had been contingent upon his securing these life insurance proceeds for the estate. Defendant then sent letters to the residual beneficiaries, Charlie Williams and Roderick Witherspoon, both of whom were incarcerated, explaining the fee to be charged for collection of the life insurance proceeds. By letter dated 21 January 1985, Mr. Williams informed defendant that he and plaintiff found the $98,000.00 fee to be grossly excessive. On 1 February 1985 defendant sent another letter to Mr. Williams, with copies to plaintiff and Mr. Witherspoon, suggesting that the claim be submitted for binding arbitration before a committee of the Twenty-First Judicial District Bar. This letter indicated that unless defendant received a positive response he would conclude that arbitration was not acceptable. Mr. Williams did not respond. On 19 February 1985, defendant met with plaintiff and suggested arbitration. Defendant's evidence tended to show that plaintiff indicated that arbitration was not necessary. The evidence most favorable to plaintiff, who had only a ninth grade education and work experience as a housekeeper, tended to show that she did not approve the $98,000.00 fee and thought the matter was going before a committee.

On 20 February 1985 Randolph and Tamer withdrew the $98,000.00 fee from the previously established account and paid the same to the law firm by a check in the amount of $101,556.60, which included additional fees of $3,530.00 and costs of $26.60. Although defendant testified that he sent plaintiff a statement marked "paid" for services rendered in the insurance litigation, plaintiff did not notice that the statement was marked paid. Plaintiff testified that she first learned that the $98,000.00 fee had been paid in September 1985 when she received a draft of the estate accounting to be filed with the Clerk of the Court.

As to the unreasonableness of defendant's fee, plaintiff presented the testimony of two expert witnesses — Norman Lefstein, dean of the Indiana University School of Law and former law professor at the University of North Carolina at Chapel Hill, and George Daly, a practicing attorney in Charlotte, North Carolina. Mr. Lefstein testified that he calculated a reasonable fee for defendant's services based on all the factors set out in the North Carolina Code of Professional Responsibility. In making this calculation he considered that the time and labor involved were the most important factors. Using the attorneys' records of the time spent on the case and the hourly fee charged, Mr. Lefstein calculated a base fee of $4,697.50. He then expressed the opinion that the other factors in the case would justify raising the fee to between $7,000.00 and $8,000.00, but that $98,000.00 was an unreasonable fee.

Mr. Daly testified that he also had calculated a reasonable fee for the work in this case. First, he multiplied the hours expended by the hourly rate. Next, he increased the base amount by one hundred and twenty percent (120%) based on the skill of the attorneys, the results obtained, and defendant's reputation. This calculation yielded the sum of $11,067.00. Based on this sum, Mr. Daly testified that $98,000.00 was an unreasonable fee.

Defendant's experts, Mr. Ralph M. Stockton, Jr. and Mr. David Wesley Bailey, both practitioners in Winston-Salem, testified that they believed the fee to be a reasonable one, but that they either did not consider the amount of time expended or did not consider this to be an important factor in establishing a reasonable fee.

Defendant argues (i) that plaintiff's expert witnesses were not qualified to testify, (ii) that the contingent nature of the recovery rendered the fee proper and (iii) that plaintiff's experts applied a theory of law, the "lodestar" theory, which has not been adopted

**WILLIAMS v. RANDOLPH**

[94 N.C. App. 413 (1989)]

in North Carolina. While each of these contentions may have merit, none of them is determinative of the issue of whether the judgment notwithstanding the verdict was proper. We are not unsympathetic to defendant's contention that plaintiff's experts were not qualified to testify as experts by reason of their lack of experience in the area of law involved and their lack of familiarity with fees customarily charged in the locality for similar legal services. Canon II, Rule 2.6(B)(3), N.C. Rules of Professional Conduct [formerly DR2-106(B)(3), N.C. Code of Professional Responsibility, superseded by N.C. Rules of Professional Conduct 7 October 1985]. Mr. Lefstein is not licensed to practice law in North Carolina. He testified that he had practiced law from 1961 to 1963 in Elgin, Illinois, and had not engaged in the private practice of law since that time. He was not familiar with legal fees in Winston-Salem, but had discussed legal fees with North Carolina lawyers and various law professors. The bases for Mr. Lefstein's qualification as an expert witness were that he had taught professional ethics at the University of North Carolina Law School and has published in the area of professional ethics.

Mr. Daly had never handled a civil case in Forsyth County but had tried a criminal case in the United States District Court in Winston-Salem. He relied on Martindale-Hubbell for information as to defendant's skill and reputation and on the results of a North Carolina Bar Association survey to determine usual hourly rates. Mr. Daly had, however, been counsel in civil actions in which legal fees were awarded by the court.

The court allowed opinion testimony as to the reasonableness of the fee from both these witnesses. As noted earlier, once admitted, both competent and incompetent evidence must be considered on a motion for directed verdict and the subsequent motion for judgment notwithstanding the verdict. *Haney v. Alexander*, 71 N.C. App. at 733, 323 S.E. 2d at 432.

Similarly, the contingent nature of the recovery does not avail defendant. Even where there is a contingent fee contract, the contract is upheld only if the fee is "absolutely just and fair." *Rock v. Ballou*, 286 N.C. at 104, 209 S.E. 2d at 479 (citing *Casket Co. v. Wheeler*, 182 N.C. 459, 467, 109 S.E. 378, 383, 19 A.L.R. 391, 397 (1921)); *Harmon v. Pugh*, 38 N.C. App. 438, 444, 248 S.E. 2d 421, 425 (1978), *disc. rev. denied*, 296 N.C. 584, 254 S.E. 2d 33 (1979). Questions of reasonableness and fairness are normally questions for the jury.

WILLIAMS v. RANDOLPH

[94 N.C. App. 413 (1989)]

Finally, we address defendant's contention that the testimony of plaintiff's expert witnesses was based on the erroneous premise that the "lodestar" theory of fee calculation is the law in North Carolina. The "lodestar" theory was adopted by the federal courts in *Lindy Bros. Builders, Inc. v. Am. Radiator, Etc.*, 540 F. 2d 102 (3d Cir. 1976). Under this theory, an initial determination as to an appropriate hourly rate is made. This rate is multiplied by the number of hours expended and then adjusted upwards or downwards to reflect all other relevant factors, yielding a reasonable attorney fee.

Defendant is correct that the cases decided by our appellate courts subsequent to *Lindy* have not adopted the "lodestar" theory to calculate legal fees. In the present case, however, both plaintiff's experts testified that they considered the factors required by the Code of Professional Responsibility, and stated which factors were most important in their calculation of a reasonable attorney fee. Again, even if testimony based on the "lodestar" theory were improper, once admitted it cannot be disregarded for purposes of a judgment notwithstanding the verdict. *Haney v. Alexander*, 71 N.C. App. at 733, 323 S.E. 2d at 432.

In our view, all the evidence, taken in the light most favorable to plaintiff, was sufficient to require that the issue of the reasonableness of the fee be sent to the jury. Therefore, it was error for the court to enter judgment notwithstanding the verdict in favor of defendant. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. at 378, 329 S.E. 2d at 342; *Horton v. Insurance Co.*, 9 N.C. App. 140, 144, 175 S.E. 2d 725, 727 (1970). Accordingly, we reverse the trial court's grant of judgment notwithstanding the verdict.

[2] Plaintiff next assigns error to the trial court's conditional allowance of defendant's motion for a new trial. Whether to grant a new trial pursuant to G.S. 1A-1, Rules 50(b)(1) and 59 is a decision within the discretion of the trial judge which will not be disturbed absent a showing that the judge's ruling amounts to a substantial miscarriage of justice. *Worthington v. Bynum*, 305 N.C. 478, 487, 290 S.E. 2d 599, 605 (1982). *See also Britt v. Allen*, 291 N.C. 630, 231 S.E. 2d 607 (1977). The trial judge may set aside a verdict and order a new trial whenever, in his opinion, the verdict is contrary to the greater weight of the credible testimony. *Britt v. Allen*, 291 N.C. at 634, 231 S.E. 2d at 611. Although we hold

that plaintiff's evidence was sufficient to submit the issues to the jury, we cannot say from the record that the trial judge abused his discretion in determining that the greater weight of credible evidence in this case would not support the verdict returned by the jury.

> In passing upon a motion to set aside a verdict as being against the greater weight of the evidence, the trial judge is not required to take the testimony of any witness at face value. At any time he is convinced that the jury has been misled by unreliable testimony into returning an erroneous verdict his is the responsibility for awarding a new trial for that reason.

*Rayfield v. Clark*, 283 N.C. 362, 367, 196 S.E. 2d 197, 200 (1973). Plaintiff's second assignment of error is overruled.

[3]   Third, plaintiff argues that the trial court erred in dismissing plaintiff's claim that defendant breached his duty under the Uniform Fiduciaries Act. We disagree. Plaintiff alleged in her complaint that defendant violated G.S. 32-34(a) which prohibits fiduciaries from making distributions to themselves. G.S. 32-34(a) provides in pertinent part:

> Except as provided in subsection (b), a power conferred upon a person in his capacity as fiduciary to make discretionary distributions of principal or income to himself or to make discretionary allocations in his own favor of receipts or expenses as between income and principal cannot be exercised by him.

We first note that Chapter 32 consists of five Articles. Article 1 of Chapter 32 is the Uniform Fiduciaries Act. General Statute 32-34 constitutes Article 4. The word "fiduciary" is defined three times in Chapter 32, G.S. 32-2, G.S. 32-14(4) and G.S. 32-25. Therefore, plaintiff's argument that the definition of fiduciary in G.S. 32-2 applies to G.S. 32-34(a) is not supported by the statute.

Moreover, the fact situation in the present case is distinguishable from that contemplated by G.S. 32-34(a). Defendant, acting for the administratrix in her disability, held a power of attorney to make disbursements for the reasonable and necessary expenses of administration of the estate. This power was not the power to make discretionary disbursements of principal or income. Without question, defendant as an attorney held the proceeds of the settlement in a fiduciary relationship. Canon X, Rule 10.1(B)(2), N.C. Rules of Professional Conduct. The payment, however, by a lawyer to himself of the legal fee for services rendered in a piece of litigation

**WILLIAMS v. RANDOLPH**

[94 N.C. App. 413 (1989)]

out of the proceeds of settlement of that litigation is not the discretionary disbursement of principal or income to oneself prohibited by G.S. 32-34(a). *See* Canon X, Rule 10.1(C)(2), N.C. Rules of Professional Conduct.

[4] Plaintiff also argues that defendant violated G.S. 32-51 by failing to have the legal fee approved by the Clerk of Superior Court. This contention is also without merit. First, plaintiff did not allege or argue a violation of G.S. 32-51 in the court below. On appeal plaintiff cannot assert for the first time matters not raised in the trial court. *Rheinberg-Kellerei GMBH v. Vineyard Wine Co.*, 53 N.C. App. 560, 566, 281 S.E. 2d 425, 429, *disc. rev. denied*, 304 N.C. 588, 289 S.E. 2d 564 (1981). Further, defendant was not serving as the fiduciary or personal representative for the estate; rather, he was the attorney for the personal representative. Hence G.S. 32-51 has no applicability to the facts of this case. Accordingly, a directed verdict at the close of all evidence on the issues allegedly raised by Chapter 32 was proper.

[5] Plaintiff next contends that the trial court erred in instructing the jury. Specifically, plaintiff argues that the trial judge failed to give jury instructions as requested by plaintiff. Pursuant to G.S. 1A-1, Rule 51, when a party aptly tenders a written request for a specific instruction which is correct in itself and supported by the evidence, it is error for the court to fail to give the instruction at least in substance. *Bass v. Hocutt*, 221 N.C. 218, 19 S.E. 2d 871 (1942). The court is not required, however, to use the precise language of the tendered instruction so long as the substance of the request is included. *Emerson v. Carras*, 33 N.C. App. 91, 97, 234 S.E. 2d 642, 647 (1977) (citing *King v. Higgins*, 272 N.C. 267, 270, 158 S.E. 2d 67, 69 (1967)).

At trial plaintiff requested a specific instruction that defendant had the burden of proof on two issues: (i) that the fee was fair and reasonable; and (ii) that plaintiff had full knowledge of all material facts relating to the fee when she entered into the agreement. The trial court instructed the jury that defendant had the burden of proving that the fee was fair and reasonable, but refused to give an instruction regarding plaintiff's "agreement" because both parties conceded that plaintiff and defendant did not enter into a contingent fee contract. The purpose of the jury charge is to clarify the issues, eliminate extraneous matters, and explain the law arising on the evidence in the case. *Fish Co. v. Snowden*,

233 N.C. 269, 63 S.E. 2d 557 (1951). Since there was no issue between the parties as to a contingent fee agreement, the court correctly refused to instruct the jury on this point.

Plaintiff also proposed an instruction which elaborated on the factors to be considered in establishing a reasonable fee. The court gave an instruction based on the North Carolina Code of Professional Responsibility. This instruction included all of the factors in plaintiff's proposed instruction, but did not place emphasis on the number of hours spent on the case. As discussed, *supra*, the "lodestar" theory of setting attorney's fees has not been adopted by our courts. Plaintiff in her brief relies heavily on *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974); however, a review of the case reveals that the jury instructions in the case at bar were not inconsistent with the factors outlined in *Johnson*. We hold, therefore, that the trial judge did not err in patterning his instruction to our Code rather than the federal decisions put forward by plaintiff.

Plaintiff contends that the trial court failed to instruct the jury that "fee customarily charged in the locality for similar legal services" refers to the customary hourly rate charged by attorneys in the locality. The court simply instructed the jury that a factor to consider was the fee customarily charged in the locality for similar legal services. The trial court instructed in accordance with the language of the Code of Professional Responsibility and did not err in not limiting the language of the Code to customary hourly rate.

[6] Next, plaintiff objects to the court's failure to instruct the jury that in order for a contingent fee to be proper there must be real uncertainty as to whether there will be a recovery at the time of the agreement. The court instructed the jury as follows:

> The lawyer may very properly demand a larger compensation if it is to be contingent or not certain. A larger compensation is permitted to attorneys only as a reward for skill and diligence exercised in the prosecution of a doubtful or litigated claim. It is not allowed where litigation merely minor services [sic] which any layman or ordinary lawyer or inexperienced lawyer might be able to perform.

The parties in this case never entered into a contingent fee contract or agreement. The Code of Professional Responsibility lists as a

WILLIAMS v. RANDOLPH

[94 N.C. App. 413 (1989)]

factor merely whether the fee is "fixed or contingent." Moreover, the instruction given was in accord with *Randolph v. Schuyler, supra,* and *Casket Co. v. Wheeler, supra.* We hold, therefore, that the court did not err in giving this instruction.

Plaintiff also objected to the jury instruction that "a fee is clearly excessive when, after reviewing the facts, a lawyer of ordinary prudence experienced in the area of the law involved would be left with the definite and firm conviction that the fee is in excess of a reasonable fee." Plaintiff's contention is that since defendant had the burden of proving that the fee was fair and reasonable, this instruction was misleading. Plaintiff also argues that the standard is not what a lawyer of ordinary prudence, experienced in the area of the law, would consider reasonable, but rather what the jury considers reasonable. The instruction is a verbatim restatement of the Code of Professional Responsibility on the issue of attorney's fees. Therefore, plaintiff's contention is without merit.

[7] Finally, plaintiff objected at trial to the manner in which the court framed the issues before the jury because the court did not include the question of whether defendant made full disclosure of all facts relevant to the reasonableness of the fees before plaintiff agreed to the fee. Both parties conceded that there was no contingent fee contract. The parties disagreed as to whether plaintiff consented to or authorized the payment of $98,000.00 in defendant's 19 February 1985 conference. The evidence, including plaintiff's evidence, clearly supported defendant's entitlement to a reasonable legal fee for services rendered; therefore, whether plaintiff agreed to the fee was not an issue, nor was whether she understood all the facts and circumstances before entering into the agreement. The issue arising from the evidence was whether the amount charged was fair and reasonable, and on this issue defendant had the burden of proof. *Randolph v. Schuyler,* 284 N.C. at 504, 201 S.E. 2d at 838. The trial court properly narrowed the issue and properly instructed the jury that defendant had the burden of proof on that issue. This assignment of error is overruled.

[8] Plaintiff's fifth argument is that the trial judge erred in admitting the testimony of defendant's reputation as to truthfulness from defendant's character witnesses. We first note that, by waiting until after the opinion for truthfulness had been stated, plaintiff failed to make timely objection to this testimony when given by the first three witnesses. *See State v. Banks,* 295 N.C. 399, 408, 245 S.E. 2d 743, 749-50 (1978); 1 Brandis on North Carolina Evidence

§ 27 (3d ed. 1988). Therefore, plaintiff has waived her objection to the testimony of these witnesses and subsequent character witnesses. A party is not prejudiced by testimony received over objection when testimony of the same purport has been previously received without objection. *See Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 532, 160 S.E. 2d 735, 745, 43 A.L.R. 3d 591, 605-606 (1968).

Furthermore, plaintiff's evidence placed defendant's reputation for truthfulness in issue when plaintiff testified that defendant paid the fee to himself under the power of attorney without her consent thus implying that defendant had engaged in self-dealing in violation of his fiduciary duty to plaintiff. General Statute 8C-1, Rule 608(a) allows evidence of truthful character after the witness's character for truthfulness has been attacked. In the present case, defendant was entitled to submit evidence of his character for truthfulness to help rebut any presumption that as a fiduciary he was guilty of constructive fraud in procuring a benefit for himself.

Finally, a lawyer's reputation is a factor to be considered under Rule 2.6(B)(7) of the Rules of Professional Conduct. Truthfulness in dealing with other members of the bar is a significant component of a lawyer's reputation at the bar. This assignment of error is also overruled.

We reverse the trial court's entry of judgment notwithstanding the verdict and affirm the order for a new trial.

Affirmed in part; reversed in part and remanded.

Judges PHILLIPS and COZORT concur.