CLIFTON H. HOOVER, PLAINTIFF v. KLEER-PAK OF NORTH CAROLINA, INC., A CORPORATION, DEFENDANT v. LAWRENCE E. HOWARD, THIRD-PARTY DEFENDANT

No. 7626DC878

(Filed 20 July 1977)

1. **Rules of Civil Procedure § 59— judgment set aside — sufficiency of affidavits — no abuse of discretion**

    The trial court did not abuse its discretion in granting plaintiff's motion to set aside a judgment for defendant pending the hearing of additional testimony where plaintiff supported his motion with affidavits which presented sworn facts by a person who did not testify at the trial; the affidavits also showed why this person did not testify at the trial; and the judge was of the opinion that his testimony could lead to a new and different judgment. G.S. 1A-1, Rule 59.

**2. Trial § 58— trial by judge without jury — conclusiveness of findings**

   In an action tried before the judge without a jury, the findings of the trial court are conclusive on appeal if supported by competent evidence, even though the evidence might sustain a finding to the contrary.

**3. Contracts § 17— commission contract — contract not terminable at will**

   Defendant's contention that its contract with plaintiff was terminable at will is without merit where the evidence showed that, by the terms of the written contract, plaintiff was to receive a 5% commission as long as defendant sold its products to a named customer whom plaintiff had acquired for defendant.

APPEAL by plaintiff from *Johnson, Judge.* Judgment entered 28 July 1976 in District Court, MECKLENBURG County. Heard in the Court of Appeals 10 May 1977.

Clifton H. Hoover, plaintiff, filed a complaint on 23 September 1974 seeking $4,693.04 allegedly owed him by Kleer-Pak of North Carolina, Inc. (Kleer-Pak), defendant, pursuant to a 15 December 1971 written contract signed by plaintiff and signed in the name of defendant by L. E. Howard, Vice President and General Manager. As far as pertinent to this appeal, the contract provided for plaintiff to develop sales of Kleer-Pak products to Brevoni Hosiery, a Division of Schulte & Dieckhoff (USA), Inc. (Brevoni), for which plaintiff was to receive a 5% commission on all such sales "as long as Kleer-Pak sells its product to Brevoni." Plaintiff alleged that since 12 December 1973 Kleer-Pak had sold $93,860.80 worth of its products to Brevoni upon which plaintiff had not received his 5% commission. Defendant answered, denying liability on the grounds that the written contract alleged in the complaint was not executed in accordance with statutory requirements and that Howard had no authorization to execute such contract on behalf of defendant. Defendant also counterclaimed, alleging damages in the amount of $7,960.00 resulting from an order placed by plaintiff on 28 November 1972 for the sale of finished products from Kleer-Pak to Brevoni that Brevoni claimed it never authorized. On the ground that no authorization was given to Howard to execute the contract with plaintiff, defendant, as third-party plaintiff, filed a complaint in this action against Howard, as third-party defendant, seeking to establish Howard's liability over to Kleer-Pak in case plaintiff established his claim. Howard answered asserting that at all times he acted pursuant to an authorization from Murray Greiff, President of Kleer-Pak.

On 1 and 2 March 1976, a non-jury trial on this matter was held in District Court. After the presentation of his evidence, plaintiff was granted a motion to amend his complaint to conform the evidence to include an allegation as to the existence of a similar oral agreement prior to the execution of the written contract between the parties. Plaintiff presented the following evidence:

Since 1957 plaintiff has been self-employed in the business of "selling packaging materials such as cellophane and polyethylene in the form of printed or unprinted bags or rolls." After defendant opened its Charlotte plant, plaintiff held discussions some time prior to 15 December 1971 upon the request of defendant's president, Murray Greiff, about selling some packaging to Brevoni for Kleer-Pak, since plaintiff already had several contacts with Brevoni. Pursuant to these discussions, Greiff orally agreed to pay plaintiff a 5% commission on all gross sales "as long as Kleer-Pak chose to do business with Brevoni Hosiery." After plaintiff informed Greiff that he would need a written contract before he could set up sales on this account, Greiff told plaintiff to have his attorney draft one. When the contract embodying the above-mentioned oral terms was prepared, plaintiff gave it to Howard, who wanted to check with Grieff before signing it. About a week later, on 15 December 1971, plaintiff and Howard, the latter acting on behalf of defendant, signed the written contract at defendant's offices in Charlotte. Thereafter, plaintiff began obtaining orders from Brevoni for Kleer-Pak's products for which he received his agreed upon 5% commission from Kleer-Pak. Plaintiff testified that although occasionally he received a written order from Brevoni, the normal routine was to get a verbal order from Brevoni, to transmit the order verbally to Kleer-Pak, thereafter to receive a written acknowledgment from Kleer-Pak, and then to obtain a copy of the invoice, against which he checked the accuracy of his commission checks. On 28 November 1972, Hubert Bertmaring, then the purchasing agent for Brevoni, submitted a verbal order for 20 million bags to plaintiff, who thereafter transmitted it to Kleer-Pak. However, Bertmaring left shortly thereafter to return to West Germany, and his replacement, Hans Lengers, refused to acknowledge the placing of the order. As a result of defendant then having to store these bags, Greiff sent plaintiff a letter on 4 December 1973 terminating plaintiff's relationship with defendant. Since that date,

plaintiff has received no commissions although the sales from defendant to Brevoni have totaled approximately $93,860.80.

Testifying for defendant, Greiff stated that the verbal agreement guaranteeing plaintiff a 5% sales commission on the new accounts he obtained for Kleer-Pak arose in the latter part of 1970 but that it was only "to continue as long as there were no problems of any nature that we would both object to." Greiff further testified that he wrote the letter terminating plaintiff's relationship with defendant because of the 28 November 1972 order which plaintiff had reported he had obtained from Brevoni but which Brevoni refused to acknowledge that it had placed. Because of this rejection the material, which was a special gauge and which could not be readily sold to other customers, had to be stored in defendant's warehouse with the estimated loss to defendant, based upon the various storage and resale costs, of approximately $10,000.00. Despite the initial rejection, about 40% of the material from the 28 November 1972 order was ultimately sold to Brevoni.

On 9 March 1976 the Court found: that plaintiff materially breached its contract with defendant by reason of his conduct surrounding the 28 November 1972 order; that defendant had suffered no actual damages in consequence of said breach; and that the third-party defendant incurred no personal liability by signing the 15 December 1971 paper writing on behalf of defendant. The court then entered judgment dismissing plaintiff's complaint, defendant's counterclaim, and defendant's third-party complaint. In apt time plaintiff filed, along with supporting affidavits, a motion for a new trial pursuant to G.S. 1A-1, Rule 59. On 14 June 1976, the court granted plaintiff's motion by entering an order setting aside the 9 March 1976 judgment and reopening the case for the taking of additional testimony.

On 2 July 1976 the reopened hearing was held with Hubert Bertmaring testifying for plaintiff and Hans Lengers testifying in rebuttal for defendant. Bertmaring testified that his normal course of operation while he was Brevoni's purchasing agent in 1972 was to place the orders verbally with plaintiff and to confirm them later with an acknowledgment and purchase order number; that he placed an order for 10 million clear bags and 20 million printed bags with plaintiff verbally in November 1972; that before he left for military duty in West Germany he had an acknowledgment for 10 million bags from defendant

but had not yet received a confirmation for the 20 million bags; that when he left for West Germany the only way Lengers could know of his orders was through a memorandum Bertmaring left for him; and that he did not include the 20 million bag order in the memorandum since he had not received the acknowledgment. Defendant's witness, Lengers, testified that while the memorandum mentioned Kleer-Pak was reserving materials for the 20 million bags, he interpreted the memorandum to mean that Brevoni was not committed to make this purchase and that Brevoni had no binding order for the 20 million bags from Kleer-Pak; therefore, he refused to confirm that order.

Amending the 9 March 1976 judgment by making new findings of fact and conclusions of law, the court on 28 July 1976 entered a new judgment awarding plaintiff his claim of $4,693.04 and dismissing defendant's counterclaim and third-party complaint. From the entry of this new judgment, defendant assigns error and appeals.

*Wardlow, Knox & Knox by William G. Robinson and John S. Freeman for plaintiff appellee.*

*Harkey, Faggart, Coira & Fletcher by Philip D. Lambeth for defendant appellant.*

PARKER, Judge.

[1] Defendant first assigns error to the order allowing plaintiff's motion pursuant to G.S. 1A-1, Rule 59, whereby the judgment of 9 March 1976 was set aside pending the hearing of additional testimony. Defendant asserts that the trial court abused its discretion in reopening the case in that the affidavits supporting the motion were insufficient to establish the grounds enumerated under Rule 59 for granting such a motion. It is well established that a motion for a new trial under G.S. 1A-1, Rule 59, is addressed to the sound discretion of the trial judge, whose ruling is not reviewable on appeal absent an abuse of discretion. *Glen Forest Corp. v. Bensch,* 9 N.C. App. 587, 176 S.E. 2d 851 (1970). Defendant has failed to show any such abuse of discretion. Plaintiff's affidavits presented sworn facts by Hubert Bertmaring which tended to show that he did in fact place the questioned order with plaintiff as well as to show why he had not testified at the earlier trial. The judge, being of the opinion that this additional testimony could lead to a new and different judgment, ordered the original judgment reopened.

Having wide latitude under Rule 59 to grant new trials, the judge did not abuse his discretion in seeking to have all the facts before him before reaching a final decision in this case. *See Finance Corp. v. Mitchell,* 26 N.C. App. 264, 215 S.E. 2d 823 (1975). Defendant's first assignment of error is overruled.

[2] Defendant assigns as error the entry of the 28 July 1976 judgment. Defendant argues that the court's findings of fact and conclusions of law are not supported by the evidence when the testimony "is considered as a whole." There is no merit in defendant's position. In an action tried before the judge without a jury, the court's findings of fact have the force and effect of a jury verdict. Thus, it is the function of the trial judge to pass on the credibility of the witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence. Therefore, the findings of the trial court are conclusive on appeal if supported by competent evidence even though the evidence might sustain a finding to the contrary. *Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29 (1968). Although the evidence presented by the parties in this case was conflicting, there was competent evidence to support the findings by the trial court. Defendant's assignment of error is overruled.

[3] Defendant finally assigns as error the court's conclusion as a matter of law that defendant terminated plaintiff's contract without just cause and thereby committed a material breach of contract. Defendant argues that the contract was terminable at will because no definite time was set for its duration. We find defendant's position untenable. The purpose of the contractual arrangement between the parties was for plaintiff to use his contacts to develop Brevoni as a customer for defendant in consideration for which plaintiff would receive a 5% commission on all gross sales made by defendant to Brevoni. Both the initial oral agreement and later the written agreement contained terms to the effect that the 5% commission would be paid to plaintiff as long as defendant sold its products to Brevoni. The terms of the contract were definite; therefore, it was not terminable at will. Finding no error in the trial court's conclusions of law, we overrule defendant's final assignment of error.

Affirmed.

Judges BRITT and MARTIN concur.