**Paul YORK, Plaintiff,**

v.

**GOLDEN POULTRY COMPANY, INC. and Gold Kist Inc., Defendants.**

**No. 5:94–CV–45–H2.**

United States District Court, E.D. North Carolina, Western Division.

April 6, 1995.

R. Gene Braswell, Henson P. Barnes, Goldsboro, NC, for plaintiff.

L. Neal Ellis, Jr., Raleigh, NC, for defendants.

### ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the defendants' motion for summary judgment. The plaintiff ("York") asserts that he had an oral contract with the defendants to sell poultry products in eastern North Carolina, and that the defendants breached that contract. He further alleges that the defendants committed fraud in that they never intended to abide by the terms of the contract. York seeks punitive damages and specific performance of his alleged contract. The parties have fully briefed this matter, and the motion for summary judgment is ripe for adjudication.

## Statement of the Case

The plaintiff, Paul York ("York"), was employed by Carolina Poultry Company in 1963 to sell dressed chickens to wholesale and retail outlets. Defendants Gold Kist, Inc., and Golden Poultry Company (collectively, "Golden") are in the business of processing and distributing chicken. In 1986, defendant Golden Poultry Company merged with a subsidiary of Gold Kist, Inc. Gold Kist is a Georgia corporation, and it owns a controlling interest in Golden Poultry. There is an apparent unity of interest between the two defendants, at least within the eastern part of North Carolina. The court will treat the two separate defendants as one entity for the purposes of this order until such time as the issue becomes relevant.

The plaintiff alleges that, after his employment with Carolina Poultry Company ended, he entered into a contract with Golden to sell poultry in eight counties in eastern North Carolina. York states that Golden needed to establish a presence in eastern North Carolina, and that he was hired by Golden for that purpose. York asserts that he was to bring to Golden his knowledge and expertise of the market for poultry in his area. The oral contract reputedly created an exclusive territory for York which consisted of the entire eastern portion of North Carolina. York asserts that he was entitled to a commission from Golden of fifty-five cents per one hundred pounds of poultry sold in his territory. The plaintiff also states the he was required to bear all of his own expenses, including the payment of his social security contributions and income taxes. The contract was to last so long as the plaintiff voluntarily remained associated with Golden and Golden sold poultry in the plaintiff's territory.

York states that the defendants intended to take over his territory for themselves. To that end, he alleges that Golden reduced his commissions, refused to service some of his accounts, began to sell into his territories through a new processing plant, and refused to pay to him all the commissions which were due. Finally, York states, Golden unilaterally terminated the contract on August 28, 1993. York alleges that Golden never intended to retain him under the terms of the contract beyond the point at which Golden could take the business which York developed.

York brought the instant suit in the Superior Court of Wayne County, North Carolina, to obtain relief from the alleged breach of contract, as well as fraud. He seeks compensatory damages, as well as specific performance and punitive damages. On January 28, 1994, Golden removed this action to federal court on the basis of diversity. In a Memorandum and Recommendation filed on June 15, 1994, and adopted by the court in an order filed on August 8, 1994, this court denied Golden's motion to dismiss, finding that the alleged contract need not be written to be enforceable; that the alleged contract was not terminable at will; and that the plaintiff's fraud and contract claims were not barred by the statutes of limitations.

## Discussion

Defendants' motion for summary judgment is authorized and governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Judgment is to be granted only where "the adverse party cannot prevail under any circumstances." *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967).

A suit founded on the court's diversity jurisdiction requires the application of the law of the state in which this court sits. If there has been no decision by the forum state, a federal court applies the law as the courts of the forum state would apply it in the same situation. *Roe v. Doe,* 28 F.3d 404, 407 (4th Cir.1994).

Defendant's motion is predicated on several different grounds. With respect to York's breach of contract claims, the defendant asserts that the contract must be in writing in order to be enforceable, that the contract was terminable at will, and that the contract action was barred by the statute of limitations. The defendants also assert they are entitled to summary judgment on York's fraud claims on the grounds that the statute of limitations bars the fraud claim, and that York has failed to demonstrate the existence of a genuine issue of material fact.

A. *Defendant's Statute of Frauds Argument*

■ This court has already fully addressed the defendants' statute of frauds claim when the defendants asserted it in their motion to dismiss. The court concluded as a matter of law that the contract need not be in writing. Defendants now reassert their argument that the contract must be in writing to be enforceable, relying again on the case of *Radio Electronics Co. v. Radio Corp.*, 244 N.C. 114, 92 S.E.2d 664 (1956). The oral contract in question allegedly requires the defendants to pay a commission to York on whatever poultry is sold within his territory. Golden contends that this is a sufficient limitation to invoke one of North Carolina's statutes of frauds.

N.C.Gen.Stat. § 75–4 provides that any statute limiting the right of a person to do business in North Carolina is unenforceable unless the contract is in writing. In *Radio Electronics Co. v. Radio Corp.*, the Supreme Court of North Carolina stated that where a contract "preclud[es] the manufacturer from doing business in North Carolina otherwise than through this single channel, is void unless the party so limited or restricted agrees thereto in writing." *Radio Electronics Co. v. Radio Corp.*, 244 N.C. 114, 117, 92 S.E.2d

664, 666 (1956). Simply stated, the case does not support the expansive proposition, that is, that *any* limitation on the right to do business must be in writing, which Golden claims that it does.

The court is aware of the logical appeal in Golden's argument. However, this court is aware of no reported decision by any North Carolina court which construes the statute in the manner in which Golden urges upon this court. Golden did not cite such a case to this court, nor, after examining North Carolina case law closely, could the court locate such language.[1] Moreover, the language of the statute is not wholly supportive of Golden's argument, in that the statute requires that the agreement be "signed by the party who agrees not to enter into *any* such business within such territory." N.C.Gen.Stat. § 75–4 (1994) (emphasis added). Finally, this court may not, when deciding a question of state law pursuant to its diversity jurisdiction, attempt to change or expand state law. *Burris Chem. v. USX Corp.*, 10 F.3d 243, 246 (4th Cir.1993).

Golden now argues, however, that further discovery has revealed that York does contend that the oral contract places a limitation on its right to sell poultry in eastern North Carolina. Golden's interpretation of York's deposition testimony, however, is somewhat strained. York did state that his territory was an exclusive one, and that he would sue if Golden began selling in that exclusive territory. However, York also stated that he was entitled to commissions on sales only to those customers which he personally developed. He further pointed out that Golden sold poultry to "Scrivner, Quinn Wholesale" from a Georgia facility because it was economically advantageous to the buyer. However, York did not participate in that sales arrangement, and claimed no commission

---

1. Most of the North Carolina cases construing or applying N.C.Gen.Stat. § 75–4 fall into one of three discrete categories: non-competition clauses which restrict the right of an employee to enter into a certain line of business for a period of years after leaving their employer; cases involving the sale of a business, in which the non-competition clause is intended to protect the goodwill of the purchased business; and distribution agreements. In each case, however, the

agreements examined by the North Carolina courts wholly restricted a party's right to do business. *See, e.g., Norlin Industries v. Music Arts, Inc.*, 67 N.C.App. 300, 313 S.E.2d 166 (1984) (non-competition clause prohibited all sales not made through a specified distributor); *Maola Ice Cream Co. v. Maola Milk & Ice Cream Co.*, 238 N.C. 317, 77 S.E.2d 910 (1953) (non-competition clause accompanying the sale of a business).

from the sales. Dep. of York at 28–9. This court cannot agree with Golden's narrow construction of York's statements. Accordingly, the court reiterates its earlier conclusion that the alleged contract need not be in writing to be enforceable.

### B. The "Terminable–at–Will" Doctrine

█ Golden next argues that the alleged contract, if it exists, is terminable at will. This contention is the second point which this court has previously addressed as a matter of law in Golden's motion to dismiss. Again, Golden contends that discovery has revealed that the contract was, in fact, terminable at will. Golden places considerable emphasis on the fact that York asserted that he could end the contract whenever he chose, while Golden could not.

This case is controlled by the outcome in *Hoover v. Kleer–Pak*, 33 N.C.App. 661, 236 S.E.2d 386 (1977). In *Hoover*, a manufacturer was contractually obligated to pay its salesperson a 5% commission as long as it continued to sell to a specified customer. In other words, the *Hoover* agreement is virtually identical to the alleged contract in this case. The Court of Appeals held that the contract was not terminable at will. *Hoover v. Kleer–Pak*, 33 N.C.App. 661, 666, 236 S.E.2d 386, 389 (1977). The fact that York asserts that he could terminate the contract when he so desired does not alter the court's conclusion. "[A]s courts do not make contracts, we are not permitted to inquire into whether the contract was good or bad, wise or foolish." *McDowell v. McDowell*, 61 N.C.App. 700, 705, 301 S.E.2d 729, 732 (1983). Accordingly, the court finds that Golden is not entitled to judgment as a matter of law on this issue, either.

### C. The Statute of Limitations for Contracts

Golden next argues that the plaintiff's claims for breach of contract are barred by the statute of limitations. Golden's argument is based on the fact that York alleges a contract with Golden Poultry. Golden Poultry, however, merged with a subsidiary of Gold Kist in 1986. Since that time, York's alleged contractual relationship was with Golden Poultry, and not Gold Kist. Golden asserts that the statute of frauds bars all contract claims against defendant Gold Kist. The defendant also claims that York's contract claims founded on the sale of poultry to Bojangles accounts and Golden's refusal to service York's Kentucky Fried Chicken account, which allegedly occurred prior to 1990, are barred by the statute of limitations.

█ The facts support Golden's arguments. The statute of limitations on contract actions in North Carolina is three years. N.C.Gen.Stat. § 1–52 (1994). York contends, however, that the Golden made a partial payment on the debt and thereby "reset" the statute of limitations period. However, North Carolina law requires that a new promise to pay be in writing to be enforceable. *Norris v. Belcher*, 86 N.C.App. 459, 461, 358 S.E.2d 79, 80 (1987). For that reason, Golden Poultry is entitled to summary judgment on York's claims relating to the Bojangles and Kentucky Fried Chicken accounts. Gold Kist is entitled to summary judgment on all of York's contract claims.

### D. The Statute of Limitations and York's Fraud Claims

█ Golden asserts that York's fraud claims are barred by North Carolina's three-year statute of limitations. A cause of action grounded in fraud must be brought within three years of the date on which the cause of action accrues. N.C.Gen.Stat. § 1–52(9) (1994). An action for fraud accrues when the fraud is discovered or should have been discovered in the exercise of reasonable diligence. *Nash v. Motorola Communications and Electronics, Inc.*, 96 N.C.App. 329, 385 S.E.2d 537 (1989). Golden asserts that York discovered the alleged fraud in 1987 or 1988, when Golden paid York less than he was owed.

█ Golden's argument completely mischaracterizes the fraud alleged by York. The alleged fraud was not aimed at obtaining work from York without full payment; instead, York alleges that Golden committed the fraud in order to obtain York's experience and expertise in building up a sales territory which Golden would then steal from

him. The alleged fraud is that Golden knowingly entered into a contract with York which it never had any intention of keeping. This type of fraud is actionable in North Carolina. *Liggett Group v. Sunas,* 113 N.C.App. 19, 30, 437 S.E.2d 674, 681 (1993). The court notes that the non-payment of commissions, standing alone, could hardly serve to put York on notice of a fraud of the magnitude which he has alleged in this case. For these reasons, the statute of frauds does not bar the plaintiff's claims of fraud.

### E. *Summary Judgment on the Fraud Claims*

Golden's final argument is that York has failed to present "clear and convincing" evidence on each element of his fraud claim, and that therefore it is entitled to summary judgment. York's response does not address this argument, but it does attach supporting documentation and the deposition of Golden's former sales manager, Arch Bynum.

█ *Under North Carolina law, the elements of fraud are "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 468, 343 S.E.2d 174, 178 (1986). Taking the evidence presented by York in the light most favorable to him, as the court must in a motion for summary judgment, York has presented an adequate forecast of evidence on each element of the fraud claim.

█ The evidence suggests that, due to the nature of the market in eastern North Carolina, Golden would be unable to successfully enter eastern North Carolina without assistance. York was exactly the man that Golden needed in order to expand, knowing as he did the specific market and the specific area quite well. This forecast of evidence, when combined with the events which followed, would permit a rational trier of fact to find for the plaintiff. Arch Bynum's deposition supports York's account of the contract. Golden's refusal to service an account of particular value and interest to it from an economic perspective is certainly suspicious.

The subsequent patter of rapid shifts in commission structure, unilateral modifications to the agreement, and York's eventual termination all support the allegation that Golden washed its hands of York when it decided it no longer needed him in order to maintain a market presence in eastern North Carolina. Accordingly, York's evidence is sufficient to create a genuine issue of material fact which precludes summary judgment.

### Conclusion

In conclusion, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is GRANTED as to plaintiff York's claims for breach of contract against defendant Gold Kist. Summary judgment is GRANTED as to York's claims for breach of contract stemming from the sales of poultry to Bojangles accounts, and for refusal to service York's Kentucky Fried Chicken account, against defendant Golden Poultry. Summary judgment is DENIED as to the remainder of York's claims.